[Civ. No. 65743. Second Dist., Div. Four. Aug. 6, 1982.]

FRIENDS OF ASSEMBLYWOMAN MARIAN W. LA FOLLETTE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
STEVEN AFRIAT, Real Party in Interest.

COUNSEL

Robert E. Kelly, Jr., for Petitioner.

No appearance for Respondent.

Thomas Wayne Pichotta for Real Party in Interest.

OPINION

AMERIAN, Acting P. J.—Petitioner, an unincorporated political committee supporting a member of the California State Assembly who is a candidate for an additional term in office, seeks a writ of mandate or prohibition against respondent superior court to command respondent to dissolve a preliminary injunction entered by it on June 17, 1982. Respondent issued the injunction at the request of real party in interest Steven Afriat (herein real party), who is the General Election opponent of Assemblywoman Marian La Follette in the 1982 General Election for State Assembly in the 38th District.

The preliminary injunction provides that petitioner is enjoined and restrained from:

"(1) Mailing or distributing or attempting to mail or distribute, to the voters of the newly constituted 38th Assembly District, the document popularly referred to as the 'Capitol Report,' a copy of which is attached hereto and made a part hereof as Exhibit 'A.'

"(2) Representing or attempting to represent, either orally or in writing, to the voters of the newly constituted 38th Assembly District, that assemblywoman MARIAN W. LA FOLLETTE represents, or has in the past represented, as an assemblywoman, the communities of Canyon Country, Chatsworth, Granada Hills, Newhall, Saugus, Shadow Hills, Sunland, Sylmar, Tujunga or Valencia."

■ At issue is the question: Is a person who is an incumbent for ballot designation purposes under Elections Code section 10212,[1] a representative who may service all residents of that newly reapportioned district even though the new district includes geographic territory from which the official was not elected at the prior General Election?

---

[1] Elections Code section 10212 provides: "At the first elections for Representative in Congress, State Senator, and Assemblyman in each congressional, senatorial, and Assembly district following reapportionment acts of the Legislature redefining the boundaries of the congressional, senatorial, and Assembly districts pursuant to Sections 6 and 27 of Article IV of the Constitution, that candidate who shall be deemed the incumbent in a given district for purposes of the election shall be:

"(a) That candidate who is running for the same office which he then holds and who is running for reelection in a district which has the identical boundaries and number as the district from which he was last elected.

"(b) In the event there is no candidate to whom the provisions of subdivision (a) apply, the incumbent shall be that candidate who is running for the same office which he then holds and who is running for reelection in a district which has the identical bound-

We answer that question in the affirmative and direct respondent court to vacate its injunction.

FACTS

Based on the declarations filed with the trial court, it appears that in the General Election of 1980, Assemblywoman La Follette (herein La Follette) was selected over real party by the voters of the 38th Assembly District as it was then constituted. After the 1980 census, the Legislature performed its duty to reapportion and, in Elections Code section 30011[2] (Stat. 1981, ch. 537), altered the boundaries of the 38th Assembly District so that it included new communities. These new communities were Canyon Country, Chatsworth, Granada Hills, Newhall, Saugus, Shadow Hills, Sunland, Sylmar, Tujunga, and Valencia (hereafter the ten new communities).

Each of the two major party candidates in the June 8, 1982, Primary Election was unopposed for nomination. La Follette was the candidate in her party primary. Real party was the candidate in his party primary. Less than two weeks before the 1982 Primary Election, real party filed an action against La Follette and petitioner, seeking, inter alia, to enjoin them from "mailing or distributing or attempting to mail or distribute, to the voters of the newly constituted 38th Assembly District, the document popularly referred to as the 'Capitol Report,' and from representing or attempting to represent, either orally or in writing, to

aries as the district from which he was last elected, but which has a different number.

"(c) In the event there is no candidate to whom the provisions of subdivision (a) or (b) apply, the incumbent shall be that candidate who is running for the same office which he then holds and who is running for reelection in a district which has the identical number as the district from which he was last elected; provided, however, that a candidate for the office of Member of the Assembly shall be considered the incumbent in such case only if the district bearing the same number is located in the same county as the district which previously bore that number.

"(d) In the event there is no candidate to whom the provisions of subdivision (a), (b), or (c) apply, the incumbent shall be that candidate who is running for the same office which he then holds and who is running for reelection in a district which contains some portion of the territory previously contained within the district from which he was last elected; provided, that in a new district which contains portions of the territory of more than one former district the incumbent shall be that candidate the greater portion of the territory of whose former district is included within the new district.

"If there is no candidate in a given district to which any of the above provisions apply, the incumbent shall be any person who is a candidate for the same office which he then holds who fulfills the residential requirements of law for candidacy within the district."

[2] The effective date of section 30011 was January 1, 1982. All references are to the Elections Code, unless otherwise noted.

the voters of the newly constituted 38th Assembly District that assemblywoman MARIAN W. La FOLLETTE represents, or has in the past represented, as an assemblywoman, the communities of Canyon Country, Chatsworth, Granada Hills, Newhall, Saugus, Shadow Hills, Sunland, Sylmar, Tujunga or Valencia." Real party also sought a preliminary injunction to restrain all defendants from identical conduct.

The theory of the action was that because the 38th Assembly District before reapportionment did not include the ten new communities, the facts were being misrepresented when La Follette was referred to as "your State Assemblywoman" in communications to residents in those newly added communities.[3]

After opposition was filed and the matter was argued, the trial court on June 17, 1982, nine days after the Primary Election, issued its preliminary injunction. We issued our temporary stay order on July 1, based on the petition for writ of mandate or writ of prohibition and the request for a temporary stay filed by petitioner. Since the temporary stay order, real party has filed preliminary opposition to the petition for writ of mandate.

## DISCUSSION

The position of real party is premised on the assertion that La Follette does not represent the ten new communities. In adopting section 10212, the Legislature set out a mechanism which, for ballot designation purposes, determines who is deemed to be "Incumbent" in an assembly district immediately after a reapportionment has occurred. It is conceded by real party that La Follette properly carries this ballot des-

---

[3]The language of the brochure, in pertinent part, refers to La Follette as "representing the communities of Agoura, Calabassas, Canoga Park, Canyon Country, Chatsworth, Granada Hills, Hidden Hills, Newhall, Northridge, Reseda, Saugus, Shadow Hills, Sunland, Sylmar, Tujunga, Valencia, Westlake Village and Woodland Hills." Additionally, in a letter signed by La Follette on the front of the brochure, she states, "Dear Friend: [¶] Welcome to the new 38th Assembly District. Due to reapportionment we are now in the same district. I'm looking forward to working with you and would like to know your thoughts and suggestions on the problems facing our community. [¶] In this newsletter I've tried to give you an idea of some of my major areas of concern and the legislation on which I have been working. [¶] Toward helping me better represent you in Sacramento, I've also included a questionnaire so that I may have the benefit of your experience and ideas. Won't you please take a few minutes to complete it and return it to me? [¶] I look forward to meeting you personally. If I can be of any help to you, please let me know. [¶] Your support and involvement will be invaluable to me as we pursue a successful partnership. [¶] Cordially,". Inside the brochure is contained the statement, "One of my primary goals as your State Assemblywoman is to respond to your needs and be of service in whatever way possible."

ignation in the 1982 Primary and General Elections in the 38th Assembly District.

Thus, in June 1982 and again in November 1982, La Follette is described on the ballot as "Incumbent." The designation will be on all ballots in the newly defined 38th Assembly District, including ballots for voters in the ten new communities. Being designated on the ballot as incumbent can be a burden or a blessing.[4] Real party urges that La Follette should bear the ballot designation of "Incumbent" for the ten new communities without being afforded the opportunity to service[5] residents of the ten new communities while the election campaign is underway. We reject this position.

The construction we place on the statute means that each resident in California will continue to be serviced, until the voters make a choice in the 1982 General Election, by the representative in the State Assembly who was selected at the 1980 General Election by voters in the district as it was then defined. *In addition*, residents in geographic territory which has been shifted to a new and different assembly district may be serviced by the representative who qualifies as incumbent under Elections Code section 10212.

Further, our view is consistent with the precepts of article IV, section 6 of the California Constitution. That section provides, "For the purpose of choosing members of the Legislature, the State shall be divided into 40 Senatorial and 80 Assembly Districts to be called Senatorial and Assembly Districts. Each Senatorial District shall choose one Senator and each Assembly District shall choose one member of the Assembly." This petition addresses our attention to the activities permitted of a Legislator *after* he or she has been "chosen" within the meaning of article IV, section 6.

In *Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638 [180 Cal.Rptr. 297, 639 P.2d 939], the Supreme Court ruled that the 1981 reappor-

---

[4]"Throw the rascals out" is a campaign slogan almost as old as our political institutions themselves.

[5]By servicing, we refer to precisely the activities referred to in the pamphlet petitioner seeks to disseminate and the use of which real party seeks to enjoin. These activities include responding to the needs of the residents, being of service to residents in connection with problems with State government, providing residents with copies of bills and background on legislation of interest, coordinating school tours of Sacramento and the Capitol and providing residents with information on consumer issues, landlord-tenant information, womens' rights, auto repair and contractors.

tionment plan would be utilized for the 1982 Primary and General Elections only. (30 Cal.3d at p. 678.) The electorate, by rejecting Proposition 12 at the June 8, 1982, Election has expressed its will that the assembly district boundaries outlined in section 30011 be used only for the 1982 Elections. New assembly district boundaries must be adopted. The net effect of our ruling is that the ten new communities currently are a part of the 38th Assembly District for servicing purposes and will retain that status until the 1982 General Election. Thereafter, the ten new communities will be a part of the 38th Assembly District as defined in section 30011 until a new reapportionment plan is adopted and survives any challenges which might be lodged against it.

Real party argues that the brochure should not be disseminated, because it violates section 29450, subdivision (b). That section provides, "Every person is guilty of a misdemeanor who, with intent to mislead the voters in connection with his campaign for nomination or election to a public office or in connection with the campaign of another person for nomination or election to a public office, shall do either of the following acts:

". . . . . . . . . . . . . . .

"(b) Assume, pretend, or imply, by his statements or conduct, that he is or has been acting in the capacity of a public officer when that is not the case.

"Any violation of this section may be enjoined in a civil action brought by any candidate for the public office involved."

A member of the State Assembly is a public officer, and real party concedes that. The fault real party sees is that in his eyes La Follette is not *now* a public officer *for the ten new communities.* Unfortunately for real party, section 29450, subdivision (b), is not written as broadly as he reads it.[6] Any expansion of the scope of that section (which defines a crime as well as affording a civil remedy) is for the Legislature and not for this court.

---

[6]The following observation was made by the legislative committee comment to the 1976 change to the Elections Code, which added section 29450, derived from former section 12051: "There was concern over the wording of 12051, however. Many of the terms, such as 'conduct' or 'imply,' are too vague. What about the situation where a former incumbent running for an office uses old photos or the phrase 'Return so-and-so' to the office? How small do the letters of the word 'former' (as in 'RE-ELECT former CONGRESSMAN JONES') have to be for the candidate to be 'pretending''

Real party urges that another penal statute dealing with the vote-casting process, section 29610, should apply to bar use of the brochure by petitioner. That section provides, "Any person who attempts to aid or abet fraud in connection with any vote cast or to be cast, or attempted to be cast, is guilty of a felony, punishable by imprisonment for 16 months or two or three years." We see no fraud involved in the terminology contained in the brochure. La Follette is now a member of the State Assembly from the 38th Assembly District. She seeks merely to service all persons (including those in the ten new communities) who will be considering her candidacy for reelection in an upcoming general election where it will be noted on the ballot that she is incumbent for the 38th Assembly District.

Finally, real party takes the position that issuance of the injunction was proper in order to prevent fraud and unfair competition. As has been noted, there is in our view no fraudulent statement contained in the pamphlet. As to the unfair competition aspect, by citing *American Philatelic Soc. v. Claibourne* (1935) 3 Cal.2d 689 [46 P.2d 135], real party blurs the distinction between the principles applicable in cases of commercial competition and those applicable to political campaigning.

Even if, arguendo, the statements in the election brochure were to be deemed misstatements of fact, the proper forum to seek correction is the public forum of the election process itself rather than through the courts. The vitality of the right of each election candidate to speak freely must be protected and preserved.

We are mindful of the words of the United States Supreme Court, in another context, when dealing with the election process as it relates to free speech under the First Amendment. In *Brown v. Hartlage* (1982)

---

or 'implying' that he is the incumbent? What use of the title 'Senator' in the case of a State Senator running for the U. S. Senate would fall under the prohibition of this section? *What about the Congressman or Legislator who has been reapportioned out of his district and is running in a new district for the same type of office? How could he possibly use his title without implying he was the incumbent?"* (Italics added.)

Section 12051, which was repealed by Statutes 1976, chapter 224, read, "No person, with intent to mislead the electors in connection with his campaign for nomination or election to a public office or in connection with the campaign of another person for nomination or election to a public office, shall do either of the following acts: [¶] (a) Assume, pretend, or imply, by his statements or conduct, that he is the incumbent of a public office when that is not the case. [¶] (b) Assume, pretend, or imply, by his statements or conduct, that he is or has been acting in the capacity of a public officer when that is not the case. [¶] Any violation of this section may be enjoined in a civil action brought by the incumbent of the public office involved."

456 U.S. 45, 61 [71 L.Ed.2d 732, 746, 102 S.Ct. 1523], the Supreme Court stated: "[A]lthough the state interest in protecting the political process from distortions caused by untrue and inaccurate speech is somewhat different from the state interest in protecting individuals from defamatory falsehoods, the principles underlying the First Amendment remain paramount. Whenever compatible with the underlying interests at stake, under the regime of that Amendment 'we depend for ... correction not on the conscience of judges and juries but on the competition of other ideas.' *Gertz v. Robert Welch, Inc., supra*, at 339-340, 41 L.Ed.2d 789, 94 S.Ct. 2997. In a political campaign, a candidate's factual blunder is unlikely to escape the notice of, and correction by, the erring candidate's political opponent. The preferred First Amendment remedy of 'more speech, not enforced silence,' *Whitney v. California*, 274 U.S. 357, 377, 71 L.Ed.2d 1095, 47 S.Ct. 641 (1927) (Brandeis, J., concurring), thus has special force. Cf. *Gertz v. Robert Welch, Inc., supra*, at 344, 41 L.Ed.2d 789, 94 S.Ct. 2997...." (Case italics ours.)

## DISPOSITION

Because of the urgency presented by the imminence of the November 1982 election, and because the parties have fully briefed the issues before this court and the process of issuing an alternative writ and placing the matter on calendar for argument would significantly delay our resolution of this matter until shortly before the election, this is an appropriate case for issuance of the peremptory writ in the first instance as authorized by section 1088 of the Code of Civil Procedure. Accordingly, let a peremptory writ of mandate issue, directing respondent to vacate its preliminary injunction issued June 17, 1982, in Los Angeles Superior Court case number NWC 86764, entitled Steven Afriat v. Marian W. La Follette, et al., and make a new order denying the application of plaintiff for a preliminary injunction. The temporary stay issued by this court on July 1, 1982, shall remain in effect until 60 days after the filing of this opinion, unless respondent earlier complies herewith.

Berg, J.,* and Tevrizian, J.,* concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied October 20, 1982.

---

*Assigned by the Chairperson of the Judicial Council.