886 F.2d 1173
 58 USLW 2274, 1989 Copr.L.Dec. P 26,479,
12 U.S.P.Q.2d 1566
 JOHNSON CONTROLS, INC., a Wisconsin corporation, Plaintiff-Appellee,
v.
PHOENIX CONTROL SYSTEMS, INC., a California corporation;
Rodney Larsen and Irene Larsen, husband and wife;
John Schratz and Martha Schratz, husband
and wife, Defendants-Appellants.
 No. 87-15088.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 15, 1988.
Decided Oct. 3, 1989.
 
 Merl O. Barns, Alioto & Alioto, San Francisco, Cal., for defendants/appellants.
 C. Owen Paepke, Fennemore Craig, Phoenix, Ariz., for plaintiff/appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before CHOY, CANBY and NORRIS, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Phoenix Control Systems, Inc., appeals the district court's grant of a preliminary injunction against alleged copyright infringement and misappropriation of trade secrets. In addition to attacking the merits of the injunction, Phoenix Control argues that the district court erred in its use of a special master and in other evidentiary matters. We affirm.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 Johnson Controls, Inc., is a Wisconsin corporation that designs and implements automated process control systems. Johnson developed a system of computer programs to control wastewater treatment plants. This product line is called the "JC-5000S." Derivatives of this program are used in several locations, and the program is customized for each location. Johnson registered its copyright in the JC-5000S.
 
 
 3
 Phoenix Control Systems, Inc., is a California corporation, formed by John Schratz in late 1983. It is a competitor of Johnson. Schratz and other individuals now working for Phoenix Control are former employees of Johnson. Johnson sued Phoenix Control for copyright infringement, misappropriation of trade secrets, unfair competition, trade libel, and interference with contractual relations. The district court granted Johnson's motion for a preliminary injunction, which prohibited Phoenix Controls from copying, distributing, preparing derivatives of, publishing, or representing that they have the ability to use Johnson's computer software referred to as the JC-5000S.
 
 STANDARD OF REVIEW; PRELIMINARY INJUNCTIONS
 
 4
 Our review of a preliminary injunction is limited. We will reverse the granting of a preliminary injunction only if the district court abused its discretion, or based its decision on an erroneous legal standard or clearly erroneous findings of fact. Dumas v. Gommerman, 865 F.2d 1093, 1095 (9th Cir.1989).
 
 
 5
 Johnson, the party requesting the preliminary injunction, had to show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor. Dumas, 865 F.2d at 1095; Apple Computer Inc. v. Formula Int'l, Inc., 725 F.2d 521, 525 (9th Cir.1984). This test is viewed as a continuum. Dumas, 865 F.2d at 1095. The district court correctly noted that in a copyright infringement claim, a showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm. Apple, 725 F.2d at 525. As a result, Johnson need only show a reasonable likelihood of success on its copyright infringement claim to support the district court's grant of the preliminary injunction.[1]DISCUSSION
 
 A. COPYRIGHT INFRINGEMENT
 
 6
 To establish a case of copyright infringement, Johnson must prove ownership of the copyright, and copying of an expression protected by its copyright. Frybarger v. International Business Machines Corp., 812 F.2d 525, 529 (9th Cir.1987); Sid & Mary Krofft Television Prod., Inc. v. McDonald's Corp., 562 F.2d 1157, 1162 (9th Cir.1977).
 
 1. Ownership and Originality
 
 7
 Phoenix Control argues that Johnson's computer program was not original, and thus not protected by copyright. See 3 M. Nimmer & D. Nimmer, Nimmer on Copyright Sec. 13.01[A] (1988). The standard of originality required for a copyright is minimal. Krofft, 562 F.2d at 1162 n. 5. Johnson's copyright registration is prima facie evidence of ownership. 17 U.S.C. Sec. 410(c); see Seiler v. Lucasfilm, Ltd., 808 F.2d 1316, 1321 (9th Cir.1986), cert. denied, 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987). The district court was entitled to rely on the copyright registration as prima facie evidence of originality. Phoenix Control's contention that Johnson's program is not original, and that there are similar programs in use by other companies, is insufficient to rebut the presumption in the absence of any evidence that Johnson copied from these other programs. See 3 Nimmer, supra, at Sec. 12.11[A].
 
 2. Extent of Copyright Protection
 
 8
 The district court held that Phoenix Control could infringe Johnson's copyright without copying the literal elements of the program, which include the source and object code. This holding is not an incorrect statement of the law. Computer software is subject to copyright protection. 17 U.S.C. Sec. 101. A computer program is made up of several different components, including the source and object code,[2] the structure, sequence and/or organization of the program, the user interface,[3] and the function, or purpose, of the program. Whether a particular component of a program is protected by a copyright depends on whether it qualifies as an "expression" of an idea, rather than the idea itself. See Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 547, 105 S.Ct. 2218, 2223, 85 L.Ed.2d 588 (1985); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204, 207-08 (9th Cir.1988); 17 U.S.C. Sec. 102(b).
 
 
 9
 Where an idea and the expression "merge," or are "inseparable," the expression is not given copyright protection. Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 742 (9th Cir.1971). In addition, where an expression is, as a practical matter, indispensable, or at least standard, in the treatment of a given idea, the expression is protected only against verbatim, or virtually identical copying. Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1507 (9th Cir.1987); Frybarger, 812 F.2d at 530.
 
 
 10
 Source and object code, the literal components of a program, are consistently held protected by a copyright on the program. See, e.g. CMS Software Design Sys., Inc. v. Info Designs, Inc., 785 F.2d 1246, 1249 (5th Cir.1986) (source code); Apple, 725 F.2d 521 (object code). Whether the non-literal components of a program, including the structure, sequence and organization and user interface, are protected depends on whether, on the particular facts of each case, the component in question qualifies as an expression of an idea, or an idea itself.
 
 
 11
 Here, the district court found that the structure, sequence and organization of the JC-5000S was expression, and thus subject to protection. The JC-5000S is a very sophisticated program, and each individual application is customized to the needs of the purchaser. This practice of adaptation is one indication that there may be room for individualized expression in the accomplishment of common functions. The district court's finding of expression is also supported by the special master's report. Regarding one particular point type, the master indicated that, although it is common for process control software packages to include provisions for collecting historical data, and using various integration and averaging schemes to do so, it is unusual to implement this function as a point type, as Johnson did. This finding also supports the view that some discretion and opportunity for creativity exist in the structure, and that the structure of the JC-5000S is expression, rather than an idea in itself. This issue will no doubt be revisited at trial, but at this stage of the proceedings we cannot say that the district court clearly erred.
 
 3. Copying
 
 12
 Johnson must show that Phoenix Control copied its computer program in order to prevail in its infringement case. See, e.g., Frybarger, 812 F.2d at 529. Copying can be shown by circumstantial evidence of access to the copyrighted work, and substantial similarity between the copyrighted work and the infringer's work. Id.; Krofft, 562 F.2d at 1162-63. Access is clear in this case, and Phoenix Control appears to concede this. Several employees of Phoenix Control are former employees of Johnson, and worked on several versions of the JC-5000S.
 
 
 13
 To show that Phoenix Control's program is substantially similar to the JC-5000S, Johnson must demonstrate substantial similarity in both ideas and expression. Frybarger, 812 F.2d at 529; Krofft, 562 F.2d at 1164-65. We conclude that Johnson met its burden sufficiently to support the preliminary injunction. The special master's report sets forth, in detailed form, the various similarities between the programs. These similarities, both in idea and expression, would permit a reasonable person[4] to find an unlawful appropriation, a capture by the infringing work of the "total concept and feel" of Johnson's work. See Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir.1987). The district court's finding of substantial similarity is supported by the record and is not clearly erroneous.
 
 
 14
 B. USE OF THE SPECIAL MASTER; EVIDENTIARY ISSUES
 
 
 15
 Phoenix Control argues that the special master was actually a court appointed expert, and should have been subject to cross-examination under Rule 706 of the Federal Rules of Evidence. Phoenix Control, however, waived any objections it had to the appointment of a master by failing to raise the issue, or moving to have the reference revoked. Spaulding v. University of Washington, 740 F.2d 686, 695 (9th Cir.), cert. denied, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984) overruled on other grounds, Atonio v. Wards Cove Packing Co., 810 F.2d 1477 (9th Cir.1987); Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1566-67 (Fed.Cir.); cert. denied, --- U.S. ----, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988); 9 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2606 (1971 & Supp.1988). A district court has discretion in appointing a special master, and may decide the extent of his duties. Fed.R.Civ.P. 53. Only a court appointed expert, and not a special master, is subject to cross examination. See Fed.R.Evid. 706(a).
 
 
 16
 Allowing the special master to consider materials submitted by Johnson under seal, to which Phoenix Control did not have access, was not improper procedure. Phoenix Control acquiesced, and even stipulated, that documentation would be submitted under seal. This is proper procedure where the parties are concerned that trade secrets may be revealed. Fed.R.Civ.P. 26(c); see also Henry Hope X-Ray Products, Inc. v. Marron Carrel, Inc., 674 F.2d 1336, 1343 (9th Cir.1982) (documents containing trade secrets had been filed under seal).
 
 
 17
 Phoenix Control also claims that the court should have reviewed the final version of its software once it was completed. We review the exclusion of this evidence for an abuse of discretion, see Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, 661 F.2d 761, 767 (9th Cir.1981), and find no abuse here.
 
 CONCLUSION
 
 18
 Johnson demonstrated a reasonable likelihood of success on its copyright infringement claim. Nonliteral components of computer software may be protected by copyright where they constitute expression, rather than ideas. Access to Johnson's program was clear, and the record supports the finding of substantial similarity. The district court did not err in its application of law, nor were any of its factual findings clearly erroneous.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Because we find that Johnson's copyright infringement claim supports the grant of the preliminary injunction, we need not reach the alternative ground of trade secret misappropriation
 
 
 [2]
 The source code is a set of instructions to the computer, in languages such as BASIC, or FORTRAN. The object code is the same set of instructions, but in binary code, a series of 1's and 0's, which the computer reads
 
 
 [3]
 The user interface, also called the "look and feel" of the program, is generally the design of the video screen and the manner in which information is presented to the user
 
 
 [4]
 By "reasonable person" we mean a reasonable person in the intended audience. See Aliotti, 831 F.2d 898, 902 (9th Cir.1987); Krofft, 562 F.2d at 1166-67