**NLFC, INCORPORATED,**
**Plaintiff–Appellant,**

**v.**

**DEVCOM MID–AMERICA, INCORPORATED, Defendant–Appellee.**

No. 94–1150.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1994.

Decided Jan. 19, 1995.

Marvin Benn, Hamman & Benn, Chicago, IL, Peter S. Vogel (argued), Stacy R. Obenhaus, Gardere & Wynne, Dallas, TX, for plaintiff-appellant.

Jody B. Rosenbaum, Bruce Golden (argued), Bruce P. Golden & Associates, Chicago, IL, for defendant-appellee.

Before BAUER and MANION, Circuit Judges, and GRANT, District Judge.*

MANION, Circuit Judge.

NLFC, Inc. ("NLFC") appeals a grant of summary judgment in favor of Devcom Mid–America, Inc. ("Devcom"). NLFC filed suit in federal district court against Devcom alleging federal copyright infringement (Count I). In addition, NLFC asserted three claims under Illinois law for misappropriation of trade secrets, tortious interference with contract, and unfair competition (Counts II–IV). The district court found that no genuine issue of material fact existed regarding the copyright infringement claim and granted summary judgment in favor of Devcom. The court then dismissed the remaining state law claims. We affirm.

## I. Background

NLFC owns the copyright to a computer program (the "NLFC software") designed for use in medical pathology laboratories.[1] Two medical facilities, Cabrini Medical Center ("Cabrini") and Franciscan Shared Laboratory ("FSL") (collectively "the labs"), contracted for the purchase and use of this software as part of computerized patient information systems installed in their labs. The software, however, contained many bugs (among other assorted problems) and the labs experienced great difficulty with NLFC in getting the program up and running. The difficulty was apparently so great that FSL sued NLFC and obtained, as part of a settlement agreement, the ability to "obtain maintenance and support services from whatever source FSL deems necessary."[2] Toward that end, FSL contracted with Devcom, an outside consulting firm located in Oakbrook, Illinois, to "remove[ ] the bugs in the NLFC Software and to enable the NLFC Software to be run on the Clients' computers."[3] Devcom's work for FSL was so successful that FSL recommended its services to Cabrini, who was having similar problems getting its system running. Devcom performed the work for both labs using dedicated telephone lines, dumb terminals, and on-site efforts. In order to assist them in making the necessary changes, a viewable copy of the source codes to the NLFC software (more on this later) was printed at Devcom's offices. After completing the work, Devcom sent a letter marketing its newly-acquired expertise to other labs using the NLFC software.

After discovering that Devcom had been retained to fix its software, NLFC filed this lawsuit alleging that Devcom copied the soft-

---

* Hon. Robert A. Grant, District Judge for the United States District Court, Northern District of Indiana, is sitting by designation.

1. The software at issue in this case was originally developed by a Texas corporation known as Lab Force, Inc. The rights to this software were acquired by NLFC after Lab Force declared bankruptcy. Both corporations contributed to the development of the software and entered into agreements with purchasers at various times concerning the software. For the purposes of this opinion both Lab Force and NLFC will be collectively referred to as NLFC.

2. This settlement agreement was entered into on November 9, 1989 and was amended on July 6, 1990. The references to outside maintenance and support services, however, are substantially the same.

3. Affidavit of Ronald G. Diener, President of Devcom Mid–America, Inc.

ware in violation of its copyright. NLFC also alleged that Devcom illegally marketed the NLFC software through the letter that it sent to other NLFC software users. After reviewing the record, the district court granted summary judgment in favor of Devcom and dismissed the three state law claims.

## II. Analysis

 NLFC first challenges the district court's grant of summary judgment on its copyright infringement claim. We review a grant of summary judgment *de novo*. *Deutsch v. Burlington N. R. Co.*, 983 F.2d 741, 743 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Summary judgment is proper only if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 938 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 256 (1993). When determining if a genuine issue of material fact exists, all facts must be construed in the light most favorable to the party opposing the motion and the court must draw all inferences in favor of that party. *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 931 (7th Cir. 1989). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). After the moving party makes this initial showing, the burden shifts to the party opposing summary judgment to present specific facts demonstrating a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553; *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990).[4]

Under section 106 of the Copyright Act, the owner of a copyright is given the exclusive right to (among other things) reproduce the work in copies, prepare derivative works based on the copyrighted work, and distribute copies of the work to the public. 17 U.S.C. § 106; *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 258 (5th Cir.1988). Section 501(a) provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright ..." 17 U.S.C. § 501(a).

 Among the works protected under § 106 of the Act are computer programs. *Atari Games Corp. v. Nintendo of America Inc.*, 975 F.2d 832, 838 (Fed.Cir.1992) (as literary works, copyright protection extends to computer programs). A "computer program" is defined in § 101 of the Act as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." These instructions take at least two forms. The first, the source code, is a set of "human readable" instructions to the computer in computer languages such as BASIC and FORTRAN. *Johnson Controls Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 and n. 2 (9th Cir.1989). A computer program also uses an object code. This is the same set of instructions, but in binary code: the presence or absence of an electrical charge, which may be represented by a series of 1's and 0's, at each cycle of a computer's operation that ultimately direct the computer's activity. *Id.; Midway Mfg. Co. v. Strohon*, 564 F.Supp. 741, 750 (N.D.Ill.1983). Computers do not act directly on source code instructions, but rather transform them into object code within the machine. *Midway Mfg. Co.*, 564 F.Supp. at 750. Both the source and

---

4. NLFC also alleges in this case that the district court erred in concluding that its Local Rule 12(n) statement contained no material evidence opposing Devcom's summary judgment motion and therefore erred in admitting Devcom's Local Rule 12(m) statement as uncontroverted evidence. Local Rule 12(n) requires that the party opposing a motion for summary judgment supply additional material facts to the court and further states that "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by

the statement of the opposing party." *See Capitol Converting Equipment, Inc. v. LEP Transport, Inc.*, 965 F.2d 391, 394 (7th Cir.1992). Instead of identifying specific disputed facts, however, NLFC merely asserted a series of allegations, legal conclusions, and questionable characterizations of the record. This court has consistently upheld a strict application of Local Rule 12, *id.*, and we do so here as well. The district court did not err in admitting Devcom's Rule 12(m) statement as uncontroverted evidence in this case.

object codes to computer software are also individually subject to copyright protection. *Johnson Controls,* 886 F.2d at 1175; *Midway Mfg. Co.,* 564 F.Supp. at 750–51.

In this case, NLFC contends that the district court erred in holding, as a matter of law, that its exclusive rights to the NLFC software under § 106 were not violated. Specifically, NLFC claims that the evidence presented below shows that Devcom violated its rights in two ways: (1) that Devcom, in the process of its activities on behalf of Cabrini and FSL, copied the NLFC software onto its in-house computer system, and (2) that Devcom illegally marketed the NLFC software as modified. We address each allegation in order.

▪ First, NLFC alleges that the district court erred in finding that Devcom had not copied the NLFC software onto its in-house computers. Neither party disputes that loading software into a computer constitutes the creation of a copy under the Copyright Act. *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 519 (9th Cir.1993), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994); *Vault Corp.,* 847 F.2d at 260 ("the act of loading a program from a medium of storage into a computer's memory creates a copy of the program"); 2 *Nimmer on Copyright,* § 8.08[A] (1994) (computer input constitutes the making of a "copy"). Rather, the dispute in this case centers on whether NLFC presented evidence from which a reasonable juror could conclude that such copying took place.[5] Devcom of course was under no duty to negate NLFC's claims in this case. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552–53 (while party seeking summary judgment always

bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record, if any, which it believes demonstrates the absence of a genuine issue of material fact, there is nothing in Rule 56 that requires a moving party to negate an essential element of an opponent's claim for which it bears the ultimate burden at trial). Instead, NLFC bore the burden, as the party opposing the motion, of coming forward with affirmative evidence proving its allegation (in this case, that Devcom did in fact illegally copy the NLFC software onto its computers). And, of course, that inference must be "reasonable in light of the competing inferences." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356–56, 89 L.Ed.2d 538 (1986). "I[f] the factual context renders the claims asserted by the party opposing summary judgment implausible, the party must 'come forward with more persuasive evidence to support their claim than would otherwise be necessary.'" *McDonnell v. Cournia,* 990 F.2d 963, 967 (7th Cir.1993) (quoting *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356).

▪ NLFC claims that it made the requisite showing and points us to the following portion from the deposition of Jon Kristofferson, Devcom's Director of Software Development:

Q: [Y]ou still have Exhibit No. 1 there in front of you, and am I wrong, isn't that a Lab Force program?

A: It says Lab Force.

Q: It also says Devcom. Does that mean it was printed out at Devcom's offices?

A: Yeah, I would say it was.

---

5. Even if such a copying could be demonstrated in this case, we are convinced that Devcom's activities were permissible under the agreements entered into between NLFC and the labs. *See MAI Systems Corp.,* 991 F.2d at 517 (to prevail on a claim of copyright infringement, a plaintiff must prove ownership of a copyright and a copying of protectable expression "beyond the scope of a license"). To illustrate, the agreement entered into between NLFC and Cabrini (the "Cabrini Agreement") allowed Cabrini to copy the NLFC software "as reasonably necessary for licensed use" and also allowed Cabrini to modify, update, enhance, and maintain the software us-

ing the source codes provided by NLFC. *See* Cabrini Agreement ¶¶ 6.2.2, 6.2.4, 6.2.7. The Agreement also expressly contemplated that Cabrini's agents and employees (under the control of Cabrini) may perform this work on behalf of the lab. *See* Cabrini Agreement ¶ 6.2.5. The settlement agreement entered into between NLFC and FSL similarly authorized FSL to obtain "maintenance and support services from whatever source FSL deems necessary." While our disposition of this case ultimately makes this analysis unnecessary, we mention it here for the sake of completeness.

Q: Do you know where that particular program . . . came from?

A: No.

Q: Was it printed at a Devcom office?

A: Yes.

From this testimony NLFC asked the district court (and now this court) to infer that Devcom loaded the software onto its in-house computers prior to printing. The factual context in this case, however, will not support this inference. For example, Kristofferson testified that the source codes to the NLFC software were not copied onto Devcom's computers. When asked why this was so Kristofferson explained that "It's illegal . . . [t]o have a copy of someone's source or object code on their machine without permission." Furthermore, several persons including Jon Kristofferson, Ronald G. Deiner, Devcom's president, and Alec J. Stapleton, Laboratory Information Systems Manager for FSL, testified that Devcom conducted its business with Cabrini and FSL using dedicated telephone lines, dumb terminals, and on-site visits. As an example, Kristofferson discussed how one particular Devcom employee went about his work:

Q: Does he have telecommunications on that PC, as far as you know?

A: Yes.

Q: So he has a modem on that machine specifically?

A: No, I believe he has a connection up through leased lines.

Q: What are the leased lines?

A: One goes to FSL and one goes to Cabrini.

Q: So he has telecommunications through the leased lines with FSL and Cabrini?

A: Yes.

Q: And he accesses them through his PC; is that your understanding?

A: Yes, using a dumb terminal emulation program.

This testimony bolsters Kristofferson's assertions and indicates that Devcom did not, during its course of business with either lab, download the software onto its computers in order to work on it. Instead, Devcom directly accessed the laboratory computers, via leased or dedicated phone lines and the use of dumb terminals. From the whole record, therefore, the only plausible inference favoring NLFC that can be drawn from the evidence produced by NLFC is that Devcom accessed the memory or hard drive of one of the laboratory computers directly through a dedicated phone line, and that the source codes were printed directly from that source. There is no support here for the inference that this information originated from one of Devcom's computers. This of course does not conclusively prove that this is what happened in this case. But it does mean that, to prove otherwise, NLFC was required to come forward with more persuasive evidence to bolster its claim. It did not do so in this case and therefore the district court was correct in granting summary judgment in favor of Devcom on this allegation.

 NLFC next contends that the district court erred in concluding that the evidence did not support NLFC's claim that Devcom marketed an enhanced version of the NLFC software to other current NLFC software users. The only evidence introduced by NLFC to prove its claim was a letter from Jon Kristofferson and Ronald Diener to Walter Girod of Our Lady of the Lake Regional, Baton Rouge, Louisiana, dated November 19, 1992. But nothing in this letter can be reasonably interpreted as marketing anything but Devcom's expertise in working with this software. Instead, the letter contains a "list of highlights of our consulting work with the [NLFC] programs," continues by describing other tasks performed for customers, and then suggests ways that future customers could benefit from Devcom's experience.[6] It simply would not be reasonable to read this letter as an attempt to market the software itself, modified or otherwise. The district court did not err in granting summary judgment in favor of Devcom on this claim as well.

 Finally, NLFC asserts that the district court erred in dismissing its three state law claims for lack of supplemental

---

**6.** *See* appendix for a recitation of the pertinent portions of this letter.

jurisdiction. Under 28 U.S.C. § 1367(a), district courts are granted supplemental jurisdiction over pendant state law claims. If all federal law claims drop out before trial, however, district courts may dismiss such claims. 28 U.S.C. § 1367(c). We will reverse a district court's dismissal of pendant state claims only upon a showing that the district court abused its discretion. *Vukadinovich v. Board of Sch. Trustees of Mich. City Area Schools,* 978 F.2d 403, 415 (7th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 133, 126 L.Ed.2d 97 (1993). The district court dismissed the three state claims in this case after properly granting summary judgment on NLFC's federal copyright claim. We can find no reason, and NLFC has not offered any, why this was an abuse of the court's discretion. The choice to dismiss on these grounds was therefore not error.

▆▆▆▆ The district court also refused to exercise federal diversity jurisdiction over the state law claims in this action, finding that NLFC could not demonstrate that "the matter in controversy exceeds the sum or value of $50,000." 28 U.S.C. § 1332(a). The party invoking federal jurisdiction bears the burden of establishing the elements of jurisdiction. *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *see also FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990). Generally the amount in controversy claimed by a plaintiff in good faith will be determinative on the issue of jurisdictional amount, unless it appears to a legal certainty that the claim is for less than that required by the rule. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Gibbs v. Buck,* 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939) ("[A] general allegation [that the jurisdictional amount exists] when not traversed is sufficient"). But if the court's jurisdiction is challenged as a factual matter by either the court or the opposing party, the party invoking the jurisdiction bears the burden of supporting its

jurisdictional allegations by "competent proof." *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979). This has been interpreted to mean a preponderance of the evidence or "proof to a reasonable probability that jurisdiction exists." *Gould v. Artisoft, Inc.,* 1 F.3d 544, 547 (7th Cir.1993) (in the context of federal removal jurisdiction); *see also Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366 n. 2 (7th Cir.1993).

In this case NLFC's complaint alleged that it "suffered damages in excess of the minimum jurisdictional limits of this court." But Devcom challenged this allegation and NLFC was therefore required to make some effort to prove that the damages sustained from its state law claims met the $50,000 threshold. NLFC did not do so, choosing instead to defend its previous assertion as sufficient. NLFC failed to add any information on the amount of damages that may have been sustained in its state claims.[7] The district court therefore did not err in dismissing NLFC's state law claims on this basis.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

### *APPENDIX*

The letter from Jon Kristofferson and Ronald Diener to Walter Girod of Our Lady of the Lake Rejoinal, Baton Rouge, LA, reads in pertinent part:

We have been instrumental in assisting Lab Force customers in support, implementation, and enhancement of the Lab Force system. We have experience on Versions 9, 10, and 11 of the Lab Force code. Below is a list of highlights of our consulting work with the Lab Force programs.

---

**7.** Both parties seem to have labored under the mistaken assumption that Devcom was required to prove that NLFC did not meet the jurisdictional amount. NLFC, for example, stated in its brief that "Devcom did not show that NLFC could not prove the value to Devcom of the trade secret component of the computer software." As discussed above, however, the burden of proving facts supporting federal jurisdiction rests with the party asserting that jurisdiction.

1.) Improved the speed performance of the Version 11 CUM reports by a factor of 3x to 5x.

2.) Rewritten the outpatient reporting module including the 100% automation of remote reporting.

3.) Fixed various problems in the IIR programs, and added some new instruments like the Coulter STK–S, and the ABL520 blood gas instrument.

4.) Rewrote and enhanced the hospital interface programs to American Express and Simborg (Bell–Atlantic). This included adding semaphore logic to eliminate the needless CPU resources wasted on looping.

5.) Wrote the XC7 bi-directional interface for Beckman Instruments direct to the Prime Computer without an IIR PC.

6.) Have done the preliminary investigation into bar-coding several of the Labforce [sic] applications.

Smaller consulting tasks performed have been bug fixing, system tune-ups, mapping out the existing application, etc. Currently we are in the processes of rewriting a major portion of the old microbiology system as a joint project between two of our clients. In this manner, they share the costs associated with the development, as well as control the direction of the development. We are also writing new bi-directional interfaces for two new microbiology instruments.

Devcom has done research in several technical areas for our clients to investigate technologies and directions. Our latest endeavor was to determine if client-server architecture would be appropriate for laboratory software. We are members of HL7 and have incorporated HL7 into our client server designs. The results of the investigation are available in the form of a paper authored by a member of our staff. For a copy of this paper, feel free to give me a call.

All of our customers have expressed an interest in forming a Lab Users Group. Would you be interested in attending? We would be delighted to entertain your questions on what Devcom can do for your [sic] and your organization. If you are interested in the

relationships we have developed with other Lab Force customers, references are available.