Mary Alice **WHEELON**, Marcia Lena **Wheelon**, Steven M. **Wheelon**, Peter G. **Wheelon**, Jennifer A. **Wheelon** and Reid A. **Wheelon**, Plaintiffs,

v.

**ALLIED PRODUCTS CORPORATION, d/b/a Verson, a division of Allied Products Corporation, Defendant.**

No. 95 C 6675.

United States District Court, N.D. Illinois, Eastern Division.

June 25, 1996.

Shelly Byron Kulwin, Michael C. Bennett, Kulwin & Associates, Chicago, Illinois, for plaintiffs.

Roger B. Harris, Sherilyn, Rosa, Lee, Peace, Altheimer & Gray, Chicago, Illinois, Thomas P. Swigert, Dorsey & Whitney LLP, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the court on the defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the defendant's motion to dismiss is granted because this court lacks subject matter jurisdiction.

### I. BACKGROUND

As stated in the plaintiffs' response to the defendant's motion, the facts of this case date back to the 1940's. Between 1947 and 1952, Orville Wheelon, while employed by Douglas Aircraft Company, Inc. ("Douglas"), invented a "new" type of industrial press.[1] Since he was employed by Douglas and had a fiduciary duty to Douglas, he disclosed his invention to the Douglas Patent Board and assigned all of his patent rights for the press to his employer. On March 11, 1952, Douglas filed an application with the United States Patent Office for a patent on the Wheelon Press. Four days later, on March 15, 1952, Douglas sold and assigned to Verson Allied Press Company ("Verson") all of its patent rights relating to the Wheelon press.

Orville Wheelon shortly thereafter terminated his employment with Douglas and began to work for Verson. On July 1, 1953, Verson and Wheelon executed a written agreement. Under the agreement, Verson agreed to pay Wheelon and his heirs and assigns a 1%[2] commission for every Wheelon press and/or any press incorporating the features of the Wheelon press that Verson or its successors or assigns made or sold. This agreement was to "remain in full force and effect during the period that Verson or Verson's successors or assigns shall continue to make or sell presses or other machines embodying the ideas, inventions, designs or improvements heretofore or hereafter developed by Wheelon."

Between 1953 and 1966, Orville Wheelon fulfilled all of his obligation under the agreement. Mr. Wheelon died in 1966. Between 1966 and 1986, Verson continued to pay Wheelon's heirs over $250,000 in commissions at the contractually specified 1% rate.

In 1986, Allied Products Corporation ("Allied") acquired Verson and made Verson a division of its corporation. Since that time, Wheelon's heirs have not been paid any commissions.

Plaintiffs, heirs of Mr. Wheelon and all citizens of California, have filed a three count amended complaint against Allied, a citizen for purposes of diversity of both Delaware and Illinois. They allege the following three causes of action: (1) a declaratory judgment (setting forth their rights under the agreement); (2) an accounting; and (3) breach of

---

1. Plaintiffs describe it in their amended complaint as a "closed cell direct hydraulic diaphragm type metal forming press." Amended Complaint, ¶ 11. For now, the court simply refers to it as the "Wheelon press."

2. Originally, Orville Wheelon received a 2½% commission but that amount has long since been reduced to 1% pursuant to the written agreement.

contract.[3] Defendants have filed a motion to dismiss and have raised the following four arguments in support: (1) lack of subject matter jurisdiction; (2) lack of jurisdiction to issue a declaratory judgment; (3) failure to state a claim for an accounting; and (4) failure to state a claim for breach of contract. Because the court agrees with the defendant that this court does not have subject matter jurisdiction, the defendant's motion is granted.

## II. *ANALYSIS*

■■■ In the defendant's motion to dismiss under Rule 12(b), the defendant first challenges the plaintiff's assertion that the amount in controversy exceeds $50,000. "If uncontested, the courts will accept the plaintiff's good faith allegation of the amount in controversy unless it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.' " *Rexford Rand Corp. v. Ancel,* 58 F.3d 1215, 1218 (7th Cir. 1995) (*citing St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)). Where, as here, a defendant challenges the plaintiff's allegation of the amount in controversy, the party invoking federal jurisdiction bears the burden of supporting its jurisdictional allegations by "competent proof." *Id.; NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 237 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995). "Competent proof" has been interpreted to mean a preponderance of the evidence or "proof to a reasonable probability that jurisdiction exists." *NLFC, Inc.,* 45 F.3d at 237 (*quoting Gould v. Artisoft, Inc.,* 1 F.3d 544, 547 (7th Cir.1993) and *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366–67 n. 2 (7th Cir. 1993)). The court may also examine the record as a whole when making this determination. *Shaw,* 994 F.2d at 366.

■■■ Here, the court finds that plaintiffs have not shown by a preponderance of the evidence that the amount in controversy for any of their claims exceeds $50,000. Plain-

tiffs' argument revolves around a recent sale of one Wheelon press to the United States Air Force for $2.5 million, which entitles plaintiff to a $25,000 commission under the agreement. This, however, only gets plaintiffs just less than halfway to the jurisdictional threshold. Other considerations lead this court to believe that plaintiffs have not proven to a reasonable probability that more than $50,000 is at stake. While plaintiffs argue that "it is possible that Allied/Verson will sell more multi-million dollar presses entitling plaintiffs to more than $50,000 in commissions," the court disagrees.

While the court recognizes that Allied/Verson has one Wheelon press on order from the United States government, the court also notes that Allied/Verson has sold no other Wheelon presses to any customer since 1986. Defendant has no other orders for Wheelon presses and has not been approached by any potential customers to provide a quotation for one. Furthermore, due to the increasing obsolescence of the Wheelon press in the industrial marketplace, defendant is not spending any of its resources in research and development for the improvement of the Wheelon press. Based on these facts, which have not been rebutted by the plaintiffs, the court finds it unlikely that plaintiffs' present and future rights under the agreement will ever exceed $50,000. Accordingly, this court does not have jurisdiction under the diversity statute, 28 U.S.C. § 1332, and grants defendant's motion to dismiss.

## *CONCLUSION*

Defendants Allied Products Corporation's Motion to Dismiss under Rule 12(b) is granted. This case is dismissed without prejudice to refiling in the state court.

---

**3.** Plaintiffs, in their reply brief, admit that Count III was mistitled and now state that the "allegations in Count III are more properly characterized as a cause of action for specific performance of the Agreement." This does not matter, however. Plaintiffs still have not shown with competent proof that more than $50,000 is at issue on this claim.