In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 03-1970 & 03-2352

SHIRLEY BOYD,

*Plaintiff-Appellant,*
*Cross-Appellee,*

*v.*

PHOENIX FUNDING CORPORATION, NORTH AMERICAN
MORTGAGE COMPANY, and LINDA ORR,

*Defendants-Appellees,*

*v.*

RESIDENTIAL FUNDING CORPORATION and
BANK ONE, N.A.,

*Defendants-Appellees,*
*Cross-Appellants.*

Appeals from the United States District Court
for the Southern District of Illinois.
No. 01-cv-0749-MJR—**Michael J. Reagan**, *Judge.*

ARGUED OCTOBER 30, 2003—DECIDED APRIL 28, 2004

Before RIPPLE, MANION, and DIANE P. WOOD, *Circuit
Judges.*

DIANE P. WOOD, *Circuit Judge.* In a misguided attempt to minimize her income tax liability, Shirley Boyd decided to mortgage two rental properties she owned in Alton, Illinois. After spending the proceeds on various personal expenses, Boyd defaulted on her payments and decided that she had been the victim of a predatory lending scheme. She filed suit in Illinois state court alleging federal truth-in-lending violations, as well as state law claims, against her mortgage brokers, the original lender, and an entity that she believed had subsequently been assigned the loans.

Despite the presence of federal claims, none of the defendants removed the case to federal court within thirty days of service, as required by the federal removal statute. Approximately ten months later, in the midst of litigation, Boyd's loans were assigned to yet another entity, which immediately removed the case to federal court once it was named as a defendant. The case remained in federal court for the next year and a half. After the district court dismissed all of her federal claims and remanded the remaining state law claims, Boyd filed this appeal. For the reasons discussed below, we reverse and remand to the district court for development of the record regarding the propriety of removal.

# I

The story of this case centers around rental properties that Boyd owned, located at 926-928 Washington Avenue and 2102 Rockwell in Alton, Illinois. After deciding that she wanted to sell the properties, Boyd was advised by Linda Orr, a mortgage broker, to take out loans using the property as collateral. Boyd mistakenly believed that mortgaging the properties would reduce her tax liability in that when she sold the two properties, presumably for the exact amount she had borrowed, she could pay off the loans with the proceeds of the sale. Boyd thought that this meant that she

would realize no income on the transaction (because the amount of the loans would equal what she obtained in the sale) and thus that she would not be obligated to pay any capital gains taxes. The tax laws, of course, do not work this way, but even independently of the tax laws, things did not work out as she had hoped. She experienced difficulties selling the properties and eventually defaulted on her loans. Deciding that she had been taken, Boyd decided to sue.

On December 12, 2000, Boyd filed a six-count complaint in the Circuit Court of Madison County, Illinois, naming four defendants: Orr, the mortgage broker who had advised her of the supposed tax scheme; Phoenix Funding Corporation ("Phoenix"), a mortgage brokerage firm Orr had recommended that had assisted in processing Boyd's loan applications; North American Mortgage Company ("North American"), the original lender, which had extended her two loans—one in the amount of $44,000 for the Rockwell property, and a second in the amount of $48,400 for the Washington property; and Homecomings Financial Networks, Inc. ("Homecomings"), which Boyd alleged had taken an assignment of "the two loans which are the subject of this litigation." Complaint at ¶ 4. According to Boyd's original complaint, "[a]fter the closing of the loans with North American Mortgage Company, North American Mortgage Company assigned the loans to Homecomings Financial Network." *Id.* at ¶ 15. Boyd alleged that Phoenix, North American, and Homecomings had violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, by failing to make the required disclosures at the time of the credit transactions. None of these defendants elected to remove to federal court within thirty days of service, as they might have done under 28 U.S.C. §§ 1441 and 1446(b).

Eventually, of course, the case reached the federal district court, and from there, this court. Because the process by which that happened is complex, and because it may have

an effect on federal jurisdiction in this case, we must retrace those steps as well as possible before considering anything further. To make a long story short, there is a serious question whether the party that removed this case to federal court was entitled to do so at the time when it acted. If so, then the removal was proper; but if it was too late, the district court should have remanded the entire case to the state court from which it came. The details are somewhat tedious, but they are essential for an understanding of the problem we must address.

We begin with the state court proceedings, which unfortunately are not as clear as one could wish. Our ability to assess what happened there is hampered by the haphazard condition of the record, which included numerous undated filings and is missing some pleadings altogether. Working with the record we have, it is plain that Homecomings actively participated in the litigation after it was named in the December 2000 complaint. On February 15, 2001, the Chicago-based law firm of Kropik, Papuga & Shaw entered an appearance on behalf of Homecomings. On March 23, 2001, Homecomings filed a motion to strike and dismiss portions of Boyd's original complaint. In this pleading, Homecomings stated that Boyd believed it to be the "assignee of the subject loan[s]." Homecomings attacked the merits of Boyd's TILA claim by arguing, in part, that the complaint did not allege any facts to support the conclusion that the loans were subject to TILA disclosures. Shortly after this pleading was filed, another attorney named Scott Bjorseth apparently entered the case on behalf of Homecomings; in any event his name appeared on several court orders as Homecomings's representative. Since Bjorseth has an address in Alton, Illinois, he may have been acting as Homecomings's local counsel. If Bjorseth entered a formal appearance on behalf of Homecomings, it is not in the record.

By March 2001, the state court had issued discovery-related orders predicated on Boyd's original complaint. Within the next four months, however, the court granted Boyd leave to amend her complaint three times. Without the benefit of date stamps, we cannot be certain, but it appears that Boyd filed an Amended Complaint on or around May 1, 2001, a Second Amended Complaint on or around July 3, 2001, and a Third Amended Complaint on or around July 20, 2001. In each of these versions, Boyd expanded the types of claims against the original four defendants, but she did not name any new defendants.

Then, on August 20, 2001, the proceedings took a curious turn. A new party appeared in the litigation, seemingly out of the blue. Bank One, N.A. ("Bank One"), filed a complaint against Boyd seeking to foreclose on the loan secured by the Rockwell property. The complaint alleged that Bank One was the holder and owner of the Rockwell note. Two aspects of this complaint are important to highlight. First, the complaint fails to specify when and where the assignment from North American to Bank One was recorded, if at all. This missing information is noteworthy because the first paragraph of Bank One's complaint carefully provides the details of the transaction between Boyd and North American, stating: "On August 2, 2000, Shirley A. Boyd executed and delivered a note payable to the order of the North American Mortgage Company . . . which was filed for record in the Recorder's Office of Madison County, Illinois, on October 24, 2000 in Book 440 at Page 3672 as Roll and Frame 2548-0961 thereby conveying to the plaintiff the property . . . ." The second unusual feature of this complaint is that it was filed on behalf of Bank One by the law firm of Kropik, Papuga & Shaw, Homecomings's attorney of record.

About a month later, the unfolding events became even more bizarre. Within a time span of two days (September 27-28, 2001), Bank One assigned both of Boyd's loans to

a new entity named Residential Funding Corporation
("Residential"), Homecomings suddenly decided that it had
never been an assignee at all, and Bank One (despite the
fact that it had assigned the loans to Residential just the
previous day) filed a foreclosure action on the Washington
property, again using the services of Homecomings's at-
torneys. On September 28, 2001, Kropik, Papuga & Shaw
filed three pleadings, one on behalf of Bank One and two on
behalf of Homecomings. The complaint filed on behalf of
Bank One sought to foreclose on the Washington property.
Again, it carefully listed the details of the transaction
between Boyd and North American with respect to the
Washington property, but failed to indicate if and when the
assignment from North American to Bank One was re-
corded.

The first motion that Kropik, Papuga & Shaw filed
on behalf of Homecomings attacked the merits of Boyd's
Third Amended Complaint, urging the court to dismiss
the common law rescission remedies that Boyd requested.
The second motion announced, quite remarkably, that
Homecomings was in fact never the assignee of Boyd's loans
(despite its earlier active participation in the litigation). In
this document, Homecomings informed the court that
Boyd's loans had been assigned to Residential by Bank One,
and that Homecomings was only "the servicing agent for
Residential . . ., and among other things, receives scheduled
periodic payments and otherwise services the loans for
Residential . . . ." As a result of this "discovery," Homecom-
ings informed the court that it had no ownership interest in
the loans and no assignee liability under TILA. Attached
affidavits from Homecomings employee Barbara Clay
indicated that one of her duties was to "review files for
loans that are involved in litigation." Clay stated that
Residential was now the holder of Boyd's notes and that "at
no time did Homecomings Financial Network, Inc., have
any legal or equitable interest" in Boyd's properties.

Appended to Clay's affidavits are documents showing that the two loans were assigned from Bank One to Residential on September 27, 2001, one day before Homecomings filed this motion in state court.

After this whirlwind of activity, Boyd filed a motion to consolidate the two foreclosure actions with her lawsuit; the court granted that motion in an order issued on October 18, 2001. Boyd also moved to substitute defendants. In the latter motion, Boyd's attorney stated: "It has come to the attention of counsel for the Plaintiff that Homecomings Financial Network appears to be a loan servicing company. It appears that its parent corporation, Bank One, N.A., as Trustee may actually be the assignee of both mortgages that are involved in this lawsuit from North American Mortgage Company." Boyd's attorney informed the court that, as of October 11, 2001, a "search report of the properties does not reflect any recorded assignment from Defendant North American Mortgage Company to any other party." Finally, Boyd's motion clarified that her failure to join Bank One as a defendant "was inadvertent, as there was no information reasonably available to Plaintiff to put her on notice that North American Mortgage Company had assigned its notes and mortgages to Bank One, N.A., instead of Homecomings Financial Network." Boyd's motion to substitute indicated that she was seeking the court's permission to name Bank One as a new defendant. The state court, however, issued an order on October 19, 2001, that granted Boyd permission to substitute Residential as a defendant in the place of Homecomings. This order indicates that Scott Bjorseth appeared for both Homecomings and Residential.

As soon as Boyd filed her Fourth Amended Complaint, substituting Residential for Homecomings as a defendant, Residential filed a notice of removal in federal district court pursuant to 28 U.S.C. § 1441. Residential's hurry to remove is evident from the fact that it filed the notice of removal

nearly a month before Boyd even served it with the Fourth Amended Complaint. Because Boyd had asserted TILA violations against it, Residential requested removal based on the district court's federal question jurisdiction, see 28 U.S.C. § 1331.

Three days after Residential requested removal, the remaining three defendants—Orr, Phoenix, and North American—filed written consents to the removal with the court. Approximately three weeks later, Bank One also consented to the removal. Bank One's written consent is especially odd because Boyd had not yet named Bank One as a defendant; she did not do so until she filed her Fifth Amended Complaint three months later, on March 6, 2002. Interestingly, Bjorseth, who had represented Homecomings in the state court proceedings, informed the district court that he would be representing both Residential and Bank One.

Shortly after the case had been removed, Boyd filed a motion to remand the case back to the state court. In her supporting brief, Boyd attached documents demonstrating the unusual chain of assignments that had occurred in the midst of litigation. This evidence raised the possibility that the unrecorded alleged assignment from Bank One to Residential of September 27, 2001, was effected to allow the defendants a second opportunity to remove. Based on its order denying remand, however, the district court did not appear troubled by the sequence of events we have outlined. In particular, the district court was not persuaded by Boyd's argument that Residential was aware of the litigation when Homecomings was served in early 2000. The court commented that "[t]he fact remains that Residential is a different company that was brought in as a defendant long after the case was originally filed and is entitled to remove the case if it satisfies the statutory criteria and follows the procedural requirements governing removal." We are not so

confident that this chain of assignments must, as a matter of law, be taken at face value.

## II

Because it implicates federal jurisdiction, we must examine the propriety of removal whenever it is fairly drawn into question. This is a question we review *de novo. Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). As the party seeking to invoke federal jurisdiction, Residential bears the burden of demonstrating that removal is proper. See *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995); *Jones v. Gen. Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976). Removal is proper if it is based on statutorily permissible grounds, 28 U.S.C. § 1441, and if it is timely. 28 U.S.C. § 1446. According to 28 U.S.C. § 1441(b), "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." It is clear that the federal truth-in-lending claim falls within the federal-question jurisdiction of the court. The murky problem is whether Residential's removal was timely.

The removal statute provides, "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by *the defendant*, through service or otherwise, of a copy of the initial pleading . . . ." 28 U.S.C. § 1446(b) (emphasis added). There is no dispute that Residential filed its notice of removal within this time period—it "otherwise" received a copy of the initial pleading naming it even before formal service. The statute uses the term *defendant* in the singular, however, and thus it does not directly address the question how to calculate the timing for removal in the event that multiple defendants

are served at different times, one of them outside the original thirty-day period.

Although the Supreme Court has not confronted this question directly either, it has recently emphasized the removal rights of a defendant:

> We read Congress' provisions for removal in light of a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process. Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, "through service or otherwise," after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). The Court went on to say that "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* at 350. Indeed, "the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Relying on the Court's language in *Murphy*, the Eighth Circuit held that a later-named defendant has thirty days from the date of service on it to file a notice of removal, even if the first-named co-defendants did not remove within the original thirty days of service. *Marano Enterps. of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757 (8th Cir. 2001). Nevertheless, the two leading treatises diverge in their recommendations of how to resolve this issue. *Wright & Miller* recommends permitting a later-served defendant 30 days to remove, whereas *Moore's Federal*

*Practice* recommends that the 30-day time limit should begin to run from service on the first defendant. See 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3739 at 336-39 (3d ed. 1998); Moore's Federal Practice § 107-30[3][a] (3d ed. 1997).

Determining whether a later-named defendant can remove an action pending in state court outside of the original thirty-day window is a question of first impression in our court. In Boyd's case, the loans that are the subject of litigation were allegedly assigned to the removing party nearly ten months after the original complaint was filed in state court. To permit TILA defendants to use assignee liability in this way creates the potential for forum-shopping, because once a TILA defendant has tested the waters in state court, it can simply assign the loan to a new entity that has the option promptly to remove the case to federal court. The issue here is even more complicated because the facts suggest that Residential may have been aware of the litigation well before it agreed to accept the assignment of Boyd's loans on September 27, 2001.

In our view, no matter how one decides the question whether a *bona fide* assignee who takes without notice of pending litigation is entitled to remove within thirty days of service, the removal statutes do not permit defendants deliberately to manipulate assignments so that the 30-day time limit on removal found in § 1446(b) can be avoided. While this is not quite the situation usually encountered under 28 U.S.C. § 1359, which states that "a district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court," the policy behind that statute is implicated here. Without further factual findings in the district court, we cannot tell whether the assignment to Residential was an innocent one in the ordinary course of business, or one de-

signed to make removal possible. It is therefore premature to try to decide whether Residential was entitled to remove when it did.

A number of important questions must be resolved on remand. The court must decide when, if ever, the alleged multiple assignments of Boyd's loans were executed and recorded. At oral argument, Boyd's attorney stated that he was unaware of any assignments from North American until the state court filings by Bank One in September 2001. When we asked appellees' counsel whether the assignments had been recorded, we received the unsatisfactory answer that Boyd had a year to conduct discovery and "find out what was going on with the loans." Determining the propriety of Residential's removal requires the court to ascertain the precise dates that the assignments from North American to Bank One and from Bank One to Residential were recorded.

Second, the court must develop a more detailed account of the relationship between Homecomings, Residential, Bank One, and North American with respect to Boyd's loans. Residential submitted an affidavit by Michael Seats, in his capacity as the secretary of Residential Funding Corporation, stating that Residential and Homecomings are "separate legal entities." While this may be technically accurate, Illinois filings show that Michael Seats is the secretary of *both* Residential *and* Homecomings. In fact, these filings reveal that Residential and Homecomings have the same Minneapolis address. Our preliminary investigation suggests that Homecomings may be a wholly owned subsidiary of the GMAC-Residential Funding Corporation, which is a subsidiary of the General Motors Corporation. If this is true, we question some of the statements made by counsel at oral argument regarding Residential's liability prior to the assignment from Bank One. Appellees' counsel informed us repeatedly that Residential could not have any TILA assignee liability until September 27, 2001, the day it

accepted the assignment from Bank One. Indeed, counsel scoffed at the suggestion that an assignee would accept TILA liability for the purpose of creating federal removal jurisdiction. When asked, however, why Residential took the assignment while the case was pending in Madison County state court, we received the implausible answer that "there was no evidence that [Residential] was aware of that." When we asked whether the state court proceedings were a matter of public record, counsel stated: "Well, I don't know that [Residential] was looking at the public records . . . ." In state court documents, Boyd alleged that Bank One is the parent corporation of Homecomings. At oral argument, appellees stated that Bank One and Residential are "entirely unrelated." The district court must establish the relationships among all of the defendants with respect to Boyd's initial transaction and alleged assignments.

Finally, the fact that Homecomings, Residential, and Bank One were represented by the same attorneys in the state and district courts requires further investigation, as it suggests that the defendants may have had undisclosed relationships. (Recall that in state court, Kropik, Papuga & Shaw and Bjorseth represented Homecomings. Kropik, Papuga & Shaw also filed pleadings on behalf of Bank One. In district court, Bjorseth filed appearances for both Residential and Bank One.) It is difficult to conceive of a litigation scenario in which these entities would choose to cooperate, given that each of their interests would be best served by trying to prove that one of the other defendants was the appropriate assignee. If Residential's counsel also represented both Homecomings and Bank One throughout the state court proceedings, then it seems unlikely that the three companies were acting independently in the litigation.

It appears at this point that Homecomings actively participated in the state court proceedings, never bothering to "review" Boyd's loan documents until nearly ten months

after the original complaint was filed. Coincidentally, Homecomings discovered that it was not the assignee the day after the loans were assigned from Bank One to Residential. On the same day, Bank One, until then absent from the litigation and apparently no longer the assignee of Boyd's loans, filed a second foreclosure action. These events occurred in the absence of any proof that the assignments to Bank One or to Residential were ever recorded. Further, these events were brought to the state and district court's attention by attorneys representing all three assignee defendants. If Residential was a *de facto* participant in the litigation from the beginning, or if any other facts suggest that manipulation of the removal process was occurring, the district court should remand the entire case to state court in accordance with the timely motion to remand that Boyd filed.

For these reasons, we REVERSE and REMAND to the district court for further proceedings consistent with this opinion.

A true Copy:

      Teste:

                                _____
                                *Clerk of the United States Court of*
                                  *Appeals for the Seventh Circuit*