[S. F. No. 16803. In Bank. July 29, 1942.]

PEARL F. SLOAN, Petitioner, v. MICHAEL J. DONOGHUE, as Registrar of Voters, etc., Respondent.

Robert W. Kenny and Morris E. Cohn for Petitioner.

Earl Warren, Attorney General, Chas. W. Johnson, Deputy Attorney General, as Amici Curiae, on behalf of Petitioner.

J. H. O'Connor, County Counsel (Los Angeles), and Hugh E. McManus for Respondent.

THE COURT.—By this proceeding in mandamus, the petitioner, a qualified elector of the 67th Assembly District, which is within the 17th Congressional District, seeks to compel the respondent, as Registrar of Voters of the County of Los Angeles, to take all steps essential to the preparation and holding of a special election on August 25, 1942, in accordance with the proclamation of the governor calling such special election. Respondent has demurred generally to the petition.

At an election held in November, 1940, Lee E. Geyer was elected a representative or congressman from the 17th Congressional District to the 77th Congress of the United States for a term ending with the expiration of that Congress at the end of the year 1942. The boundaries of such district at the time of his election were fixed and established by section 117 of the Political Code, as amended in 1931, and the district then comprised the 66th, 67th and 68th Assembly Districts. On October 13, 1941, Geyer died and a vacancy thereby resulted, which now exists. Intermediate his election and death, however, the Legislature at its regular session held in 1941 adopted a new Apportionment Act which changed the boundaries of the 17th Congressional District. This was done by repealing section 117 of the Political Code and substituting therefor section 110 of that code (Stats. 1941, ch. 696). The latter section delineated the 17th Congressional District as comprising the 66th, 67th, 68th Assembly Districts and the 46th Assembly District, the latter district being added to what formerly had constituted the boundaries of said congressional district. On April 8, 1942, the governor by proclamation ordered that a special election be held August 25, 1942, in the 17th Congressional District, to fill the vacancy there existing. The proclamation, pursuant to opinion of the Attorney General first had and obtained, ordered that such special election

be held in the 17th Congressional District "as the said district was constituted in 1940 and prior to the taking effect of the Reapportionment Act in 1941, to fill the vacancy . . . caused by the death of Lee E. Geyer."

The issue presented by this proceeding is whether the election was properly proclaimed to be held in the 17th Congressional District as it existed when Geyer was elected. Or, conversely, should the election have been proclaimed to be held in the enlarged district as it existed when the governor issued his proclamation.

A brief reference should first be had to the constitutional and statutory provisions relating to the election of Representatives to Congress.

Clause 1 of section 4 of article I of the federal Constitution provides that the Legislature of each state shall prescribe the times, places and manner of holding such elections, subject to the power of Congress to make or alter such regulations at any time.

Clause 4 of section 2 of article I of the same Constitution provides that "When vacancies happen in the representation of any state, the executive authority thereof shall issue writs of election to fill such vacancies." (It was pursuant to this authority that the governor issued the proclamation ordering the special election here involved.)

Pursuant to its constitutional authority, Congress has provided that "The time for holding elections in any State . . . for a Representative . . . to fill a vacancy . . . may be prescribed by the laws of the several States . . ." (2 U. S. C. A. § 8.) The Legislature of this state has adopted no statute relating to the filling of such vacancies.

We are satisfied that under the circumstances of this case the proclamation of the governor properly called for the election to be held in the old district. McCrary on Elections, 4th ed., p. 141, states "The true rule, therefore, must be that a district once created, and having elected a Representative in Congress, should be allowed to continue *intact* for the purpose of filling any vacancy which may occur, until the end of the Congress in which it is represented."

In 20 Corpus Juris 89, section 67, it is said that "If after a congressional election the state is redistricted and a vacancy then occurs, such vacancy should be filled by the suffrage of

the electors of the old district and not by that of the electors of the new district . . .''

In *Hunt* v. *Menard,* reported in 2 Bartlett Contested Congressional Election Cases, p. 477, the House of Representatives, acting under clause 1, section 5 of article I of the federal Constitution which makes it the sole judge of the validity of elections of its members, refused seats to two persons who based their claims thereto upon a special election held in a new district. It was there said: ''It would not be a preservation of the purity of the elective franchise, nor would it be a just guardianship of the republican principle that all shall have a right to be represented, to admit the power of a State legislature to provide that a portion of the people should have two representatives in Congress, while another portion should have none, or not to be represented by the man of their choice . . . It is, besides, in disregard of the law of Congress of June, 1842, which declares that no one district shall be entitled to two representatives.''

It is true that the practice has not been uniform, such elections in some states having been ordered in the new district, in others in the old district. It is significant, however, that *Perkins* v. *Morrison,* 1 Bartlett Contested Congressional Election Cases 142, wherein it was held by the House of Representatives that a representative was entitled to be seated who had been elected to fill a vacancy at a special election held in the new district, was expressly disavowed by the House in *Hunt* v. *Menard, supra,* quoted from above. Other cases, such as *Pool* v. *Skinner,* reported in Mobley Contested Congressional Election Cases, p. 65, and *People* v. *Voorhis,* 222 N. Y. 494 [119 N. E. 106], went off upon the proposition that courts are without jurisdiction to interfere with a governor's proclamation or to enjoin an election based thereon, upon which proposition we need not here express any opinion because of our conclusion on the ground first herein mentioned. Upon the merits, however, the four dissenting justices in the Voorhis case, *supra,* expressed views in accordance with our conclusion herein stating, ''Thus the state could, by this reasoning, place the Seventh district over upon the territory of the Fourth, and direct that a vacancy occurring in the Seventh be filled from the new congressional district. The same territory and electors would thereupon have two representatives in Congress, the one elected in 1916 for the Fourth district still in office, and the one elected to fill the vacancy in the new Sev-

enth, changed to the boundaries of the Fourth. This in part has been done here. . . . To shift that district during his term over upon the territory of some other district by simply changing the number and then permitting the vacancy to be filled from that other district is in effect, if not in theory, giving two congressmen from the same district. A district represents a defined territory and not a mere number. It is a practical matter, and not one that yields to attenuated argument. I doubt whether the Legislature has power, in view of this act of Congress, to change the congressional district from which a Representative is elected during his term of office. However this may be, I am convinced that the Legislature in passing the acts of 1917 never intended to have them apply to vacancies, but that, as above stated, the intention was to have these new districts for the next regular congressional election.''

While this appears to be the first instance in which this court has been called upon to determine whether under the circumstances here presented a special election to fill a vacancy is properly called in the old district, and not in the new district, it is not the first time the problem has arisen in this state. The attorney general states that similar problems have arisen with the adoption of each apportionment act by the Legislature and that his office uniformly has advised that the special election should be held in the old district, the new district being effective for the first time at the general election next following the adoption of the apportionment act. He cites us to five such opinions, exclusive of the one rendered to the governor in this instance, emanating from his office since 1929.

Nothing in the Apportionment Act of 1941 indicates that it was intended to apply to special elections held to fill vacancies arising in terms occupied at the time of its passage. It was intended to apply to the next general election and succeeding elections. That it could not have been intended to apply to a special election to fill a vacancy in the present Congress would appear from the fact that it provides for twenty-three congressional districts and the State, now represented by twenty congressmen, is entitled to twenty-three congressmen only in the Seventy-eighth and succeeding Congresses for which the first election is the general election to be held in November of this year.

Moreover, to apply the Apportionment Act of 1941 to spe-

cial elections held to fill vacancies arising in terms occupied at the time of its passage would lead to arbitrary and capricious results. To cite one: If the special election here involved were to be held in the new enlarged district, the voters of the 46th Assembly District, which district has been added to the old 17th Congressional District, would be accorded double representation in the present Congress for they are already represented by the congressman from their old district in whose selection they had a voice. As already shown, such double representation is improper. By the same token the voters of the 46th Assembly District are not disenfranchised by restricting the special election to fill the vacancy to the old district for, as stated, they are already represented in this Congress.

We are satisfied, therefore, that the only practical and sound conclusion is that regardless of the repeal of the act (§ 117, Pol. Code) creating and delineating the old district, the special election to fill the vacancy now existing should be held in the old district, thus retaining the same proportionate Congressional representation under the old apportionment act and giving to the new apportionment act application to the selection of representatives for the Seventy-eighth and succeeding Congresses, as intended.

Let a peremptory writ of mandate issue forthwith upon the filing of this decision.