**Venancio GAONA, Victor B. Moheno, Arcadio Viveros, Plaintiffs– Appellants,**

v.

**Susan B. ANDERSON, Fresno County Clerk–Registrar of Voters; Gale S. Enstad, Kern County Clerk–Recorder; Joan L. Bullock, Kings County Clerk– Recorder; March Fong Eu, California Secretary of State; Charles Weissburd, Los Angeles County Registrar of Voters; Frank Heston, San Bernardino County Registrar of Voters; Nadine Svoboda, Tulare County Clerk, Defendants–Appellees,**

and

**Pete Wilson, Governor of the State of California, Defendant–Intervenor– Appellee.**

No. 93–55145.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 24, 1993 *.

Decided Feb. 24, 1993.

---

* The panel finds this case appropriate for submission on the briefs without oral argument.

Allan Browne, Browne & Woods, Beverly Hills, CA, for plaintiffs-appellants.

Anthony L. Miller, Chief Counsel to the Secretary of State, Sacramento, CA, for defendant-appellee Eu.

Manuel Medeiros, Deputy Atty. Gen., Sacramento, CA, for defendant-intervenor-appellee.

Before: GOODWIN, SCHROEDER, and CANBY, Circuit Judges.

PER CURIAM:

This lawsuit arises out of a special election scheduled to take place on March 2, 1993 in California state senate district 16 ("SD 16").[1] The election will fill the vacancy created when State Senator Don Rogers resigned from his SD 16 seat, to which he was elected in 1990.

California has 40 state senators who are elected to four-year staggered terms. Cal. Const., art. IV, sec. 2. Senators in the 20 even-numbered districts were elected in 1990; senators in the 20 odd-numbered districts were elected in 1992. Cal.Elec.Code § 30121. In 1991, when the Legislature failed to reach agreement on reapportionment of the state's senatorial and assembly districts after the decennial census, the Governor petitioned the California Supreme Court to adopt a reapportionment plan. The court appointed three special masters to propose a plan, and in 1992 the Court reviewed and adopted the proposed plan in *Wilson v. Eu*, 1 Cal.4th 707, 4 Cal.Rptr.2d 379, 823 P.2d 545 (1992). The court found that the special masters properly "attempted to draw voting district lines in such a manner as to maximize the opportunities for meaningful minority participation in California elections." *Id.* at 715, 4 Cal. Rptr.2d 379, 823 P.2d 545. The newly con-

---

1. The March 2 election is a primary; if no one candidate in the March 2 special primary elec-
tion receives more than 50% of the vote, there will be a special general election on April 27.

figured even-numbered districts will not elect new representatives until 1994.

Appellants are three registered Latino voters who reside in the newly configured SD 16. They filed this action for declaratory and injunctive relief against California's Secretary of State March Fong Eu and six county officials responsible for the conduct of elections in the six counties affected by the special election.[2] They contend that "[t]he decision to use the outdated version of SD 16 for the upcoming special election instead of the newly created district contravenes both the federal Voting Rights Act and the California Constitution."

The district court denied appellants' motion for preliminary injunction, finding that the appellants failed to show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) serious legal questions and the balance of the hardships tipping in their favor. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1174 (9th Cir. 1989). We affirm.

ANALYSIS

A. Merits

1. *California law requires the use of the "old" senate district for the special election*

The decision to hold the special election in "old" SD 16 was based on established California law. In *Sloan v. Donoghue*, the California Supreme Court held that when the legislature changed the boundaries of a congressional district between an election and the death of the congressman elected, the special election to fill out the remaining years of the vacant seat was properly held in the district as it existed at the time of the dead legislator's election. *Sloan v. Donoghue*, 20 Cal.2d 607, 127 P.2d 922 (1942).

In *Legislature v. Reinecke*, 10 Cal.3d 396, 110 Cal.Rptr. 718, 516 P.2d 6 (1973), the California Supreme Court examined whether elections for state senate had to be held in all senate districts after a decennial census and reapportionment, or only in the 20 new even-numbered districts normally scheduled for that year. The court not-

ed that if the California Constitution's provision regarding staggered terms were given effect, the senators in odd districts elected in 1972 were entitled to serve until 1976, and if vacancies occurred in those districts before 1976, they would be filled using the districts in effect in 1972. *Reinecke* at 404, 110 Cal.Rptr. 718, 516 P.2d 6, citing *Sloan.* The court held there was no violation of equal protection in the continuance of staggered terms in state senate elections following redistricting. *Id.* 10 Cal.3d at 406, 110 Cal.Rptr. 718, 516 P.2d 6.

2. *Voting Rights Act*

Appellants contend that following the *Sloan/Reinecke* rule by holding this special election in "old" SD 16 violates section 2 of the Voting Rights Act. This contention is without merit.

■ Section 2 of the Voting Rights Act is violated not only by intentional discrimination, but also by any voting practice or procedure which results in the denial of equal access of members of a protected minority group to the political process, regardless of intent. 42 U.S.C. § 1973; *Thornburg v. Gingles*, 478 U.S. 30, 43–44, 106 S.Ct. 2752, 2762–63, 92 L.Ed.2d 25 (1986); *cf. Garza v. County of Los Angeles*, 918 F.2d 763, 766 (9th Cir.1990).

■ Appellants argue that the use of "old" SD 16 for the upcoming special election denies them equal access to the political process in three ways. First, the "new" SD 16 has a much higher percentage of minority voters than the "old" SD 16. Second, many of the minority voters in the "new" SD 16 last voted in an odd-numbered district in 1988, and will not get to vote again until the regularly-scheduled elections in even-numbered districts in 1994. Finally, appellants maintain that the use of the "old" senate district "prevents early implementation of a senate district specifically designed by the California Supreme Court to enhance minority representation in the California Senate."

**2.** The district court granted the Governor's motion to intervene as a defendant below.

In our view, none of these results of the *Sloan/Reinecke* rule constitute a denial of appellants' equal access to the political process. To the contrary, appellants are being treated precisely like all other California electors. As a result of the interaction of decennial reapportionment and the staggered election system, certain voters will always have their votes accelerated, while others' votes will be deferred. Appellants failed to rebut evidence proffered by appellees that the use of "new" 16 instead of "old" SD 16 for the special election would result in a similarly massive deferral of votes.

As the district court correctly pointed out, any diminution or deferral of minority voting strength caused by holding the special election in "old" SD 16 is precisely the same diminution or deferral that would have taken place had no vacancy occurred. Appellants made no showing that old SD 16 was created in violation of the Voting Rights Act, or that the 1990 election in old SD 16 violated the Act. Appellants stated that they did not challenge the staggered term system or seek to require all 40 state senators to stand for election after each decennial redistricting. If there is no violation of the Voting Rights Act by the continued service of an "old SD 16 state senator" after reapportionment until the regularly-scheduled election in 1994, there is no diminution in minority voting rights caused by the special election at issue here.

Appellants rely heavily on this court's decision in *Garza v. County of Los Angeles*, 918 F.2d 763, 766 (9th Cir.1990) for their argument that the special election in "old" SD 16 has a discriminatory impact violative of the Voting Rights Act. *Garza* is inapposite for two reasons. First, although we acknowledged in *Garza* that the Voting Rights Act "forbids not only intentional discrimination, but also any practice shown to have a disparate impact on minority voting strength," we affirmed the district court expressly on the basis of its holding that the County engaged in intentional discrimination. *Id.* at 766, 769. Here, appellants do not claim that there was any discriminatory intent motivating the decision to use old SD 16 for the special election.

More important, in *Garza*, the district court made detailed findings of discrimination concerning the reapportionment. Appellants here do not even allege the reapportionment to be discriminatory in either intent or impact—to the contrary, appellants laud the reapportionment as an effort to maximize minority voting rights. Neither *Garza* nor any of the authorities cited by appellants support the proposition that the Voting Rights Act requires a *piecemeal acceleration* of minority voting rights.

The Seventh Circuit recently rejected a challenge to an election that used "old" districts after new census data were available. *Political Action Conference of Illinois v. Daley*, 976 F.2d 335 (7th Cir.1992); *see also French v. Boner*, 963 F.2d 890 (6th Cir.1992). Like the plaintiffs in *Daley*, appellants concede that SD 16 was fair when established, but contend that it has grown to have a discriminatory effect due to population changes. As the district court held here:

> the better view is that during transition periods, [the Voting Rights Act] does not require that new districts favorable to minorities must be implemented at the expense of reasonable transition procedures absent findings of discriminatory intent or impact under the old districting plan.

### 3. California Constitution

Appellants further contend that the decision to use old SD 16 for the special election violates Article XXI of the California Constitution, which requires that "the population of all districts of a particular type shall be reasonably equal." In *Reinecke, supra,* the California Supreme Court interpreted Article XXI to require that the "population of senate ... districts should be within 1 percent of the ideal except in unusual circumstances, and in no event should a deviation greater than 2 percent be permitted." 10 Cal.3d at 411, 110 Cal. Rptr. 718, 516 P.2d 6. Appellants contend

that old SD 16 exceeds the current ideal population by more than 7 percent.

The *Reinecke* court, however, cited *Sloan* for the proposition that senators elected prior to reapportionment are entitled to finish out their terms, and if a vacancy occurs mid-term, the old district should be used for the special election. *Reinecke,* 10 Cal.3d at 404, 110 Cal.Rptr. 718, 516 P.2d 6. Accordingly, as the district court held here,

> the better view appears to be that the California Supreme Court expected the *Reinecke* criteria to apply to newly created districts, not to districts covered by the *Sloan* rule. For this reason, plaintiffs are unlikely to show that the choice of the old SD 16 for the special election violates the California Constitution.

We find that the district court was correct in determining that appellants did not show a likelihood of success on the merits on either the Voting Rights Act claim or the claim arising under the California Constitution.

**B. Irreparable harm and balance of hardships**

The district court's analysis of the balance of the hardships is short but persuasive:

> First, holding the special election in the old SD 16 will not create any hardship for Plaintiffs because they will not be in a worse position than if the special election had not been called at all. Holding the special election in the old SD 16 only denied them certain advantages they would gain if the election were held in the new SD 16. *See Chalk v. United States Dist. Ct.,* 840 F.2d 701, 704 (9th Cir.1988) (primary purpose of preliminary injunction is to preserve status quo pending determination of action on the merits).
>
> Second, changing the location of the special election at this time will cause waste and confusion ... Third, holding the special election in the new SD 16

rather than the old SD 16 will simply shift election costs from Los Angeles County to Fresno, Madera, and Tulare Counties. Fourth, mitigating vote deferral by holding the special election in the new SD 16 will simply create vote deferral elsewhere. Fifth, departing from the *Sloan* rule will complicate future election planning because officials will not be able to predict where special elections will be held. These considerations shift the balance of hardships decisively in Defendants' favor.

The district court concluded that because the appellants raised only a serious legal question and not a likelihood of success on the merits, and the balance of hardships did not tip sharply in·appellants' favor, the preliminary injunction should be denied. *Johnson Controls, supra,* 886 F.2d at 1174; *Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir.1983). We affirm the decision of the district court.[3]

AFFIRMED.

---

**3.** Appellee Eu moves to supplement the record on appeal with declarations of county officials concerning the current status of election prepa-

rations. We deny the motion to supplement the record.