TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|                          |   |                   |
|--------------------------|---|-------------------|
|                          | : |                   |
| OPINION                  | : |                   |
|                          | : | No. 21-1103       |
| of                       | : |                   |
|                          | : | December 16, 2021 |
| ROB BONTA                | : |                   |
| Attorney General         | : |                   |
|                          | : |                   |
| LAWRENCE M. DANIELS      | : |                   |
| Deputy Attorney General  | : |                   |

THE HONORABLE RITA L. NEAL, COUNTY COUNSEL OF SAN LUIS OBISPO COUNTY, has requested an opinion on questions relating to an election to fill a vacancy on a board of supervisors after redistricting.

**QUESTIONS PRESENTED AND CONCLUSIONS**

1.  Will the boundaries for San Luis Obispo County Supervisorial District Three adopted in 2011 apply to the 2022 election to fill the unexpired term of a deceased incumbent elected in 2020?

Yes.  The boundaries of District Three adopted in 2011, which were in effect at the time of the deceased incumbent's election in 2020, control until the next regular election for that seat in 2024, when the boundaries adopted in 2021 will control.

2.  Will the individual elected at the 2022 Supervisorial Election for District Three serve a two-year or four-year term?

The individual will serve two years because the election is to fill the remainder of the term of the deceased incumbent.

1

## BACKGROUND

San Luis Obispo County is a general law county that is divided into five supervisorial districts. Each supervisor is elected to office for a four-year term, and the supervisorial elections alternate every two years between the odd-numbered districts and even-numbered districts. The following chronology recounts the circumstances giving rise to the two questions addressed in this opinion.

- On September 20, 2011, after the 2010 decennial census, the San Luis Obispo County Board of Supervisors adopted new boundaries for its supervisorial districts.

- On March 3, 2020, Adam Hill was re-elected to District Three of the San Luis Obispo County Board of Supervisors for a four-year term running from January 2021 to January 2025. Districts One and Five also held elections.

- On August 6, 2020, Supervisor Hill passed away.

- On November 20, 2020, Governor Newsom appointed Dawn Ortiz-Legg to fill the vacancy in District Three.

- On December 14, 2021, using the 2020 decennial census results, the San Luis Obispo Board of Supervisors adopted new boundaries for the county's supervisorial districts.

- On June 7, 2022, an election will be held to fill the remainder of the unexpired term in District Three. On that same date, regular elections will be held for District Two and District Four.

The period for submitting candidate paperwork for the June 2022 election will begin in early January 2022. By then, according to the county, it needs to advise candidates of the district boundaries for the election, partly because these boundaries affect whether candidates are qualified to run based on their legal residence. Accordingly, the county counsel has requested an opinion about which District Three boundaries will control for the June 2022 election—the old boundaries adopted in 2011 (and used when Supervisor Hill won re-election in 2020) or the new boundaries adopted in December 2021. Relatedly, the opinion request asks whether the term for the District Three supervisor elected in the 2022 election will be two years or four years.

After examining the statutes governing elections to fill vacancies on boards of supervisors after redistricting, including recent legislative amendments, and after re-examining our 2014 opinion addressing similar questions regarding city council vacancies, we conclude that the old boundaries control and that the winner of the 2022 election for District Three supervisor will serve for two years. We set forth our reasoning below.

2

**ANALYSIS**

In a general law county, the board of supervisors comprises five members elected to four-year, staggered terms.[1] Generally, each supervisor represents a district rather than the county at large.[2] The Governor must make an appointment to fill any vacancy on a board of supervisors.[3] The appointed supervisor then serves until a successor is elected at the next general election.[4] If the next general election after appointment occurs at the mid-point of the four-year term of the incumbent who vacated the office, the newly elected supervisor will serve for two years—the remainder of that four-year term.[5] On the other hand, if the appointment occurs in the second half of the incumbent's term, the next general election will not take place until the incumbent's term is set to expire, in which case the appointee will serve the remainder of the incumbent's four-year term, and the supervisor who is elected will serve a new, four-year term.[6]

After each federal decennial census, the board of supervisors must adopt new boundaries for the supervisorial districts to make their populations substantially equal.[7] A change of boundaries during a supervisor's term of office does not change the term of office.[8]

The first question presented involves the statutory provision governing which boundaries must be used in elections of supervisors after redistricting. Elections Code section 21506, subdivision (b), provides:

> At the first election for county supervisors in each county following adoption of the boundaries of supervisorial districts, *excluding a special election to fill a vacancy* or recall election, a supervisor shall be elected for

---

[1] Gov. Code, §§ 24203, 25000, subd. (a).

[2] Gov. Code, § 25040.

[3] Gov. Code, § 25060.

[4] Gov. Code, §§ 24201, 25061; see Elec. Code, §§ 324, subd. (a), 1000, 1001.

[5] Gov. Code, §§ 24201, 25060, 25061; 64 Ops.Cal.Atty.Gen. 1, 3-4 (1981); 32 Ops.Cal.Atty.Gen. 108, 111-112 (1958).

[6] Gov. Code, §§ 25060, 25061; 64 Ops.Cal.Atty.Gen., *supra*, at p. 4.

[7] Elec. Code, § 21500; see Cal. Const., art. XXI, § 2, subd. (d)(1); 52 U.S.C. § 10301 et seq.; *Evenwel v. Abbott* (2016) 578 U.S. 54, 57-60.

[8] Elec. Code, § 21506, subd. (a).

3

each district under the new district plan that has the same district number as a district whose incumbent's term is due to expire.[9]

We must examine whether the June 2022 election to fill the San Luis Obispo County Supervisorial District Three vacancy is "a special election to fill a vacancy." If so, the boundaries used in this election would not be according to the "new district plan." Instead, the boundaries would be based on the prior district plan.

To determine whether this type of election is a "special election" under Elections Code section 21506, we turn to the statute authorizing elections to fill vacancies on boards of supervisors, Government Code section 25061. Section 25061 specifies that "[t]he election of a supervisor to fill the vacancy for the unexpired term shall be held at the next general election."[10] But this statute does not expressly declare whether this type of election is "special."

Under the Elections Code, a "special election" is "an election, the specific time for the holding of which is not prescribed by law."[11] Conversely, a "regular election" is "an election, the specific time for the holding of which is prescribed by law."[12] As for a "general election," it is a statewide election that occurs in even-numbered years on specified dates.[13]

Considering these definitions, we inquire whether an election to fill a vacancy, held at a general election in the middle of a deceased supervisor's term, occurs at a specific time prescribed by law. On the one hand, a general election is held on a regular election date, which is a specific time prescribed by law.[14] On the other hand, an election for this office

---

[9] Elec. Code, § 21506, subd. (b) (emphasis added).

[10] Gov. Code, § 25061.

[11] Elec. Code, § 356.

[12] Elec. Code, § 348.

[13] Elec. Code, §§ 324, 1000, 1001.

[14] Elec. Code, § 324, subd. (a)(2) (a general election is "[t]he election held throughout the state on the first Tuesday after the first Monday of November in each even-numbered year" or "any statewide election held on a regular election date").

4

21-1103

would not always, or even usually, be held at this specific time—only when a vacancy in the first half of the supervisor's term necessitated the election.[15]

As to which of these interpretations should prevail, the courts have provided authoritative guidance, instructing that an election to fill a vacancy is a special election, even if it takes place during a general election.[16] The California Supreme Court has stated that "[a]n election to fill a vacancy occasioned by the death or resignation of an officer is a special election, and the provision of our laws which requires such elections to be held at the same time and place with general elections, does not change their character."[17] As framed by another court, "[i]t is not necessarily the time or manner of holding an election to fill a vacancy that makes it a special election, but the fact that it is held at a time other than the time fixed by law to elect an officer for the regular or defined term."[18] Thus, a special election to fill a vacated office may occur at a general election.

In light of this guidance, we conclude that because the election to fill a supervisorial vacancy takes place at a time not designated by law for the regular election of that office, it is a special election for that office.[19] Accordingly, the plain text of Elections Code section 21506 excludes this category of elections from the general rule that new district boundaries shall apply in elections after redistricting. Instead, the old district boundaries apply.

We find further support for this conclusion in the legislative history of Elections Code section 21506. This history indicates that the Legislature agreed with our

---

[15] Gov. Code, §§ 24203, 25000, subd. (a), 25061. If a supervisorial vacancy occurs in the second half of the four-year term, the next general election will occur when the term is expiring and thus will be a regular election for that office, not a special election. (Gov. Code, §§ 24202 ["Supervisors shall be elected at the general election prior to expiration of the term of the incumbents"], 25061 [no election to fill vacancy where "the term expires on the first Monday after January 1st succeeding the election"]; see 64 Ops.Cal.Atty.Gen., *supra*, at p. 4.)

[16] *People ex rel. Lee v. Prewitt* (1899) 124 Cal. 7, 10-11; *People ex rel. McKune v. Weller* (1858) 11 Cal. 49, 64; *People v. Porter* (1856) 6 Cal. 26, 29; accord, *State ex rel. Lanier v Hall* (N.D. 1946) 23 N.W.2d 44, 49; *People ex rel. Anderson v. Czarnecki* (Ill. 1924) 143 N.E. 840, 841.

[17] *People v. Porter, supra,* 6 Cal. at p. 29.

[18] *State ex rel. Lanier v Hall, supra,* 23 N.W.2d at p. 49.

[19] Similarly, a special election to fill a council vacancy may occur during a general election. (Elec. Code, §§ 324, 1000, subds. (a), (d), (e), 1001; Gov. Code, § 36512, subd. (b)(1).)

interpretation in a prior Attorney General opinion of a statute corresponding to section 21506.

In that prior opinion, we construed Elections Code section 21606, pertaining to elections for city council members of general law cities after redistricting.[20] At that time, also, section 21606's language closely tracked that of section 21506, the statute concerning county supervisors.[21] Subdivision (b) of section 21606 provided that "[a]t the first election for council members in each city following adjustment of the boundaries of council[] districts, a council member shall be elected for each district under the readjusted district plan that has the same district number as a district whose incumbent's term is due to expire."[22]

We interpreted this language in the context of examining whether a person appointed to fill a city council vacancy must have legal residence in the boundaries of the district effective at the time of the incumbent's election or after the intervening redistricting. In interpreting the pertinent statutory language, we observed that because the phrase "the first election" triggered use of the "readjusted district plan," the issue was whether the phrase included special elections and appointments to fill vacancies.[23] We preliminarily noted that the term "first election," if read in isolation, conceivably could encompass a special election to fill a council vacancy.[24]

Examining the phrase "first election" in the entire statutory context, however, we determined that, for several reasons, it applied only to the next regular election for that office, not to an appointment or special election.[25] First, we explained, Elections Code "section 21606, subdivision (b), directs that, in the first election post-reapportionment, the districts filling seats under the readjusted district plan will be those with the same district numbers as those 'whose incumbent's term is due to expire' . . . , which is when the next regularly-scheduled election would take place."[26] Second, "by its use of the plural form, the statute's introductory phrase '[a]t the first election for council members' indicates that the election would be for multiple council positions, which, again, would indicate a regularly-scheduled election, rather than a specially-held election to fill a vacancy."[27]

---

[20] 97 Ops.Cal.Atty.Gen. 12 (2014).

[21] See Stats. 1994, ch. 920, § 2.

[22] 97 Ops.Cal.Atty.Gen., *supra*, at p. 15.

[23] *Id.* at p. 15.

[24] *Id.* at pp. 15-16.

[25] 97 Ops.Cal.Atty.Gen., *supra*, at p. 16.

[26] *Ibid.*

[27] *Ibid.*

Third, subdivision (a) of section 21606 (essentially identical to its county counterpart in section 21506) "specifies that 'the term of office' of any council member shall not be affected by a change in district boundaries" and therefore that "the 'term of office' would continue for its full duration, further indicating that the redrawn boundaries should not be used for a given office until the first regular election for that office."[28]  Fourth, we believed that "it would be inharmonious if the boundaries that the appointed member represented were to change during the elective term of office, based on the fortuity that the elected incumbent happened to resign or was otherwise unable to serve out his or her full term."[29]  Lastly, our interpretation found analogous support in California Supreme Court precedent that had applied this same rule to district boundaries for United States representatives and California state senators after redistricting.[30]  Thus, we concluded, "the district boundaries used when the former council member was elected are to be used for the remainder of his or her unexpired term when filling his or her vacancy."[31]

Significantly, this statutory interpretation of Elections Code section 21606 (governing council members of general law cities) applies neatly to the parallel language of section 21506 (governing county supervisors).[32]  Moreover, as we will explain, we believe that the Legislature subsequently codified our interpretation of the language present in both these statutes.

In 2020, in Assembly Bill No. 1276 (AB 1276), the Legislature made various changes to local redistricting procedures.[33]  To section 21506 and section 21606, the bill added the phrase discussed above—"excluding a special election to fill a vacancy or recall election."[34]  According to a committee analysis, this amendment merely *clarifies* that the

---

[28] *Ibid.*

[29] *Id.* at pp. 16-17 ("The voters within the old boundaries were the ones who elected the [official] for that term, not the voters of the part of the new district that lies outside those boundaries").

[30] *Id.* at pp. 17-18, citing *Legislature v. Reinecke* (1973) 10 Cal.3d 396, 404-406 & *Sloan v. Donoghue* (1942) 20 Cal.2d 607, 609.

[31] *Id.* at p. 18.

[32] See *Lexin v. Super. Ct.* (2012) 47 Cal.4th 1050, 1091 (statutes on the same subject or class of things will be read consistently "to the extent their language permits").

[33] See Stats. 2020, ch. 90, §§ 4, 13.

[34] The companion statutes now read:

At the first election for county supervisors in each county [council members in each city] following adoption of the boundaries of supervisorial [council] districts, *excluding a special election to fill a vacancy or recall election*, a supervisor [council member] shall be elected for each district under the new

7

first election for county supervisors in each county or for councilmembers in each city following adoption of the boundaries of supervisorial districts does not include a special election to fill a vacancy or a recall election, as specified."[35]

Courts presume that the Legislature is aware of an Attorney General opinion construing a statute.[36] Absent corrective measures by the Legislature to change the opinion, courts also presume that the Legislature did not intend to displace the Attorney General's interpretation.[37] Relatedly, "[a]n amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute."[38]

In amending Elections Code sections 21506 and 21606, the Legislature was presumably aware of our recent opinion interpreting the language "first election" in context to mean "first regular election" for the given office.[39] Further, nothing in the legislative record suggests that in adding the language, the Legislature was taking corrective measures to supersede the opinion. Instead, by clarifying, the Legislature presumably was making a declaration of existing law rather than changing it. Indeed, it would be anomalous for the Legislature to deviate without justification from the longstanding federal, state, and municipal rule of using the old boundaries in this situation.[40]

---

district plan that has the same district number as a district whose incumbent's term is due to expire.

(Elec. Code, § 21505, subd. (b), italics added, bracketed portions added to reflect language of Elec. Code, § 21606, subd. (b); see Assem. Bill No. 1276 (2019-2020 Reg. Sess.) as amended Jul. 2, 2020.)

[35] Sen. Com. on Elec. and Const. Amendments, analysis of Assem. Bill No. 1276 (2019-2020 Reg. Sess.) as amended Jul. 29, 2020, Aug. 1, 2020, p. 4, italics added; see *Cal. Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 646 ("Committee reports are often useful in determining the Legislature's intent").

[36] *Cal. Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17; *People v. Gjersvold* (2014) 230 Cal.App.4th 746, 751.

[37] *Cal. Assn. of Psychology Providers v. Rank, supra,* 51 Cal.3d at p. 17; *People v. Gjersvold, supra,* 230 Cal.App.4th at p. 751.

[38] *Western Security Bank v. Super. Ct.* (1997) 15 Cal.4th 232, 243-244, internal quotation marks omitted.

[39] See 97 Ops.Cal.Atty.Gen., *supra,* at p. 16.

[40] See *Legislature v. Reinecke, supra,* 10 Cal.3d at pp. 405-406.

21-1103

Also, as the requestor points out, an election to fill a city council vacancy is a "special election," and the Legislature in enacting AB 1276 intended the election procedures for cities and counties to be consistent. According to the Legislative Counsel's digest, "the bill would make technical, clarifying, and conforming changes to make these provisions consistent" for "counties, general law cities, and charter cities" with respect to the "procedures and criteria pursuant to which [they] adopt supervisorial and council district boundaries for the purpose of electing members of a county's board of supervisors or a city's council."[41] The Government Code specifically directs that a council vacancy shall be filled by appointment or "special election."[42] Thus, the same excepting phrase— "excluding a special election to fill a vacancy"—in the companion statute for city council members means that an election to fill a vacancy of a city council member elected under the old boundaries will use the old boundaries.[43] To satisfy the Legislature's desire for consistency in supervisorial and council district boundaries, the exception in Elections Code section 21506, subdivision (b), should be read in the same way.[44]

In AB 1276, and in an earlier, 2019 bill, Assembly Bill No. 849 (AB 849), another commenter finds additional evidence of the Legislature's intent that old boundaries be used when filling a supervisorial vacancy after redistricting occurs during the term of office.[45]

---

[41] Legis. Counsel's Dig., Assem. Bill No. 1276 (2019-2020 Reg. Sess.); see *Van Horn v. Watson* (2008) 45 Cal.4th 322, 332, fn. 11 ("Although the Legislative Counsel's summary digests are not binding, they are entitled to great weight" in ascertaining legislative intent, internal citations omitted).

[42] Gov. Code, § 36512, subd. (b) ("If a vacancy occurs in an elective office provided for in this chapter, the council shall, within 60 days from the commencement of the vacancy, either fill the vacancy by appointment or call a special election to fill the vacancy").

[43] Elec. Code, § 21606, subd. (b).

[44] Because we find that the phrase "special election to fill a vacancy" in Elections Code section 21506, subdivision (b), includes an election to fill a supervisorial vacancy at a general election, we reject the suggestion of one commenter that the Legislature meant to apply the phrase only to a small number of charter counties whose charters specifically call for special elections to fill vacancies. Rather, we agree with the requestor that if the Legislature wished to "reduce the scope of this exclusion from 58 counties to little more than a handful," it would have been explicit and would not have sought to "'hide elephants in mouseholes.'" (Deputy County Counsel Daniel P. Solish, Memo. to San Luis Obispo County Counsel Rita L. Neal Re: the Effect of Redistricting on the 2022 District Three Supervisorial Election, Nov. 10, 2021, p. 10, quoting *Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118, 1135.)

[45] Assem. Bill No. 849 (2019-2020 Reg. Sess.).

21-1103

AB 1276 was, in part, a "clean-up bill" for AB 849.[46] In AB 849, the Legislature had added the following language to section 21506 for county supervisors and similar language to section 21606 for city council members: "The successor to the office of supervisor in a supervisorial district for which the district boundaries have been changed shall be a resident and voter of that supervisorial district."[47] Interpreted broadly, this amendment could have been seen as inconsistent with our 2014 opinion, applying the new district boundaries even to the election of a supervisor filling the vacancy (the "successor") of the supervisor elected under the old district boundaries. But in the process of enacting AB 1276, the Legislature deleted this provision of AB 849.[48] It seems that in doing so, the Legislature was correcting any misconception that the new boundaries should be used in this situation.

Based on our analysis, we conclude, as to question one, that at the June 2022 election to fill the unexpired term of San Luis Obispo's District Three supervisor elected in 2020, the 2011 boundaries rather than the 2021 boundaries apply.

In question two, we are asked whether the term of the candidate elected at the 2022 supervisorial election for District Three will serve a two-year term or four-year term. Nothing has altered the law on this. The election is to "fill the vacancy for the unexpired term," which is four years for a supervisor.[49] This "term of office" is not "affected by any change of the boundaries of the district from which the supervisor was elected."[50] Since the term of office of Supervisor Hill, the deceased supervisor elected in 2020, was four years, the supervisor who is elected to District Three in 2022 will serve for two years, the remainder of that term.

*****

---

[46] Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill. No. 1276 (2019-2020 Reg. Sess.) as amended Aug. 19, 2020, Aug. 21, 2020, pp. 5-6.

[47] Former Elec. Code, § 21506, subd. (d), as amended by Stats. 2019, ch. 557, § 9; see former Elec. Code, § 21606, subd. (c), as amended by Stats. 2019, ch. 557, § 22 ("The successor to the office in a council district in which the boundaries have changed shall be a resident and voter of that council district").

[48] Assem. Bill. No. 1276 (2019-2020 Reg. Sess.) as amended Jul. 29, 2020, §§ 4, 13.

[49] Gov. Code, § 25061; see Gov. Code, §§ 24203, 25000, subd. (a).

[50] Gov. Code, § 21506, subd. (a); see 64 Ops.Cal.Atty.Gen., *supra,* at p. 3 ("the phrase 'term of office' relates to the office and not to the incumbent" and "always remains the same"), citing *Holbrook v. Bd. of Directors of Imperial Irr. Dist.* (1937) 8 Cal.2d 158, 161 ("In a term of office there may be several tenures but the term of office remains the same").