TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 22-501 |
|  | : |  |
| of | : | July 20, 2022 |
|  | : |  |
| ROB BONTA | : |  |
| Attorney General | : |  |
|  | : |  |
| LAWRENCE M. DANIELS | : |  |
| Deputy Attorney General | : |  |

The HONORABLE THOMAS J. UMBERG, DAVE MIN, and JOSH NEWMAN, STATE SENATORS; and the HONORABLE COTTIE PETRIE-NORRIS, TOM DALY, and SHARON QUIRK-SILVA, ASSEMBLY MEMBERS, have requested an opinion on a question relating to representation by county supervisors after redistricting.

**QUESTION PRESENTED AND CONCLUSION**

May the Orange County Board of Supervisors enact new supervisorial district boundaries that become effective before the next regularly scheduled election, such that supervisors are assigned to represent different constituents than those who elected them?

For election-related purposes, the Elections Code provides that the county's supervisorial district boundaries do not change after redistricting until the next regularly scheduled supervisorial election for that district. Until then, a supervisor remains electorally accountable to constituents in the district that elected that supervisor, and the board of supervisors may not prohibit a supervisor from representing those constituents. Nonetheless, the board of supervisors may direct a supervisor to also represent constituents according to the new district boundaries.

# BACKGROUND

Under the California Constitution, a charter county is "subject to statutes that relate to apportioning population of governing body districts."[1] Orange County is a charter county.[2] Its board of supervisors consists of five members elected "by and from designated supervisorial districts" for four-year, staggered terms.[3] Its charter provides that state law governs county operations except as expressly set forth in the charter.[4] The charter does not include any provisions addressing redistricting or its effects on supervisorial representation.

On December 7, 2021, the Orange County Board of Supervisors enacted an ordinance approving new supervisorial district boundaries using population data from the 2020 decennial census. This redistricting ordinance altered the boundaries of each of the five districts. Four of the five districts' newly-drawn boundaries overlap with, but are not identical to, their former areas. But the changes to District Two were extreme—the newly-formed District Two does not overlap at all with the prior District Two.[5] In November 2022, Districts Two, Four, and Five will have a regular election for district

---

[1] Cal. Const., art. XI, § 4, subd. (a); see Elec. Code, § 14026, subd. (b) ("'District-based elections' means a method of electing members to the governing body of a political subdivision in which the candidate must reside within an election district that is a divisible part of the political subdivision and is elected only by voters residing within that election district").

[2] *People ex rel. Kerr v. County of Orange* (2003) 106 Cal.App.4th 914, 917; see *Younger v. Bd. of Supervisors* (1979) 93 Cal.App.3d 864, 870 ("a charter county has only those powers and can enact within its charter only those provisions authorized by the [state] Constitution," including the enumerated powers in article XI, section 4, plus "all powers provided for counties under the general law"); see generally Cal. State Association of Counties, County Structure & Powers, at https://tinyurl.com/3ccnbwkh (as of Jul. 14, 2022) (discussing the powers of charter counties and non-charter ("general law") counties).

[3] Gov. Code, § 25000, subd. (a); Orange County Charter, §§ 101, 102.

[4] Orange County Charter, § 202; see *People ex rel. Kerr v. County of Orange, supra*, 106 Cal.App.4th at pp. 922-926.

[5] The old District Two comprised the cities of Costa Mesa, Cypress, Huntington Beach, La Palma, Los Alamitos, Newport Beach, Seal Beach, and Stanton; portions of the cities of Buena Park and Fountain Valley; and the unincorporated area of Rossmoor. The new District Two comprises the City of Santa Ana; portions of the cities of Anaheim, Garden Grove, Orange, and Tustin; and the unincorporated area of North Tustin.

2

supervisor, and in November 2024, Districts One and Three will have a regular election for district supervisor.

The Orange County redistricting ordinance did not specify an effective date, although a staff report accompanying the ordinance stated that it would become effective on January 6, 2022.[6]  This is consistent with state law providing that an ordinance becomes effective 30 days after enactment.[7]  The staff report also stated that "[a] Supervisor, regardless of if they reside in the newly drawn district, will continue to represent the same numbered district, with the new boundaries, to which they were elected through the remainder of their term."[8]  The report did not provide any authority for this statement about representation after redistricting, and the board of supervisors did not discuss this topic at the meeting when it adopted the ordinance.

Afterwards, an issue arose over whether supervisors were permitted to use county resources in parts of their old districts that were not included in their newly-drawn districts.  Subsequently, the board of supervisors approved a resolution directing that all county resources requested, directed, or organized by an individual supervisor may not be used or expended in an area outside the supervisor's newly-drawn district unless the supervisor obtained written consent from the supervisor representing the outside area or unless the outside area is within a city or unincorporated area shared by the two districts.[9]  The resolution further states that, in the event that this directive is contravened, the county auditor-controller must withhold payment for any goods or services sought and must promptly notify the board, which may refer the matter to the Fair Political Practices Commission or the Attorney General.

These events prompted the requestors to seek an opinion relating to when district boundaries become effective for the purpose of supervisorial representation.  While the Orange County resolution appears to involve both representation and budgetary authority,

---

[6] Orange County Exec. Office, Supp. Agenda Item, Agenda Staff Report for Adoption of 2021 Redistricting Map Ordinance dated Dec. 2, 2021, at https://tinyurl.com/4xuxrpy8 (as of Jul. 14, 2022).

[7] Gov. Code, § 25123.

[8] Orange County Exec. Office, Supp. Agenda Item, Agenda Staff Report for Adoption of 2021 Redistricting Map Ordinance dated Dec. 2, 2021, at https://tinyurl.com/4xuxrpy8 (as of Jul. 14, 2022).

[9] Revision Mem. of Robin Stieler, Clerk of the Orange County Bd. of Supervisors, Revision to Agenda Item S48B on the Apr. 26, 2022, Bd. Meeting Agenda, dated Apr. 22, 2022, at https://tinyurl.com/5hvfner7 (as of Jul. 14, 2022).

22-501

this opinion only addresses questions of state law related to representation.[10]  In our analysis below, we do not interpret or evaluate specific provisions of that local resolution.

## ANALYSIS

1. **For election purposes, the boundaries of a supervisorial district do not change until the next regularly scheduled supervisorial election for that district.**

Every ten years, after the federal census, a county board of supervisors must adopt new district boundaries "so that the supervisorial districts shall be substantially equal in population as required by the United States Constitution."[11]  The goals of redistricting are to protect the people's voting power and ensure their equal representation.[12]

Elections Code section 21506(b) addresses the question of when old or new boundaries should be used for supervisorial elections after redistricting.  It provides:  "At the first election for county supervisors in each county following adoption of the boundaries of supervisorial districts, excluding a special election to fill a vacancy or a recall election, a supervisor shall be elected for each district under the new district plan that has the same district number as a district whose incumbent's term is due to expire."[13]

Last year, we were asked to construe Elections Code section 21506.[14]  In that opinion, we determined that the "first election" after redistricting refers to the first *regularly scheduled* election for a supervisorial seat.  Thus, a special election to fill a supervisorial vacancy must be conducted according to the district boundaries as they existed when the term began, not according to the district boundaries adopted by intervening redistricting.[15]  Accordingly, we concluded that a 2022 election to fill a

---

[10] Our focus on questions of state law is consistent with our longstanding policy of declining requests for opinions that exclusively call for interpretation of local laws.  Responsibility for interpreting local laws generally rests with local government lawyers.

[11] Elec. Code, § 21500; see *Evenwel v. Abbott* (2016) 578 U.S. 54, 57-60.

[12] *Garza v. County of Los Angeles* (9th Cir. 1990) 918 F.2d 763, 775, citing *Kirkpatrick v. Preisler* (1969) 394 U.S. 526, 531.

[13] Elections Code section 21506 is part of a legislative scheme that "establishes procedures and criteria pursuant to which counties . . . adopt supervisorial . . . district boundaries for the purpose of electing members of a county's board of supervisors . . . ."  (Legis. Counsel's Dig., Assem. Bill No. 1276 (2019-2020 Reg. Sess.).)

[14] 104 Ops.Cal.Atty.Gen. 80, 80 (2021).

[15] *Id.* at pp. 83-87.  We also determined that an election to fill a supervisorial vacancy was a "special election" within the meaning of this statute.  (*Id.* at pp. 82-83.)

supervisorial vacancy should use the same boundaries as those used in the original election for the seat in 2020.[16]

Our 2021 opinion is consistent with other opinions dealing with elections during this transition period after redistricting. For instance, in a 2014 opinion, we construed Elections Code section 21606, pertaining to filling vacancies in city councils of general law cities after redistricting.[17] We concluded that "the district boundaries used when the former council member was elected are to be used for the remainder of his or her unexpired term when filling his or her vacancy."[18] We explained that "it would be inharmonious if the boundaries that the appointed member represented were to change during the elective term of office, based on the fortuity that the elected incumbent happened to resign or was otherwise unable to serve out his or her full term."[19]

Two California Supreme Court cases dealing with vacancies in other offices after redistricting lend analogous support to our conclusion about county supervisors. In *Sloan v. Donoghue*, the court held that when the Legislature changed the boundaries of a congressman's district after his election, and then the congressman died during his term, the special election to fill out the remainder of his term was correctly held in the district as constituted at the time he was elected.[20] The court found this to be "the only practical and sound conclusion" and explained that it would result in "retaining the same proportionate Congressional representation under the old Apportionment Act and giving to the new Apportionment Act application to the selection of representatives for the Seventy-eighth and succeeding Congresses, as intended."[21]

The case of *Legislature v. Reinecke* resolved a similar issue in the context of California's staggered election system for state senators, addressing whether state senatorial elections "must be held in all 40 senate districts in 1974" after decennial

---

[16] *Id.* at pp. 80-87.

[17] 97 Ops.Cal.Atty.Gen. 12, 12 (2014). Elections Code section 21606(b) provides: "At the first election for council members in each city following adoption of the boundaries of council districts, excluding a special election to fill a vacancy or a recall election, a council member shall be elected for each district under the new district plan that has the same district number as a district whose incumbent's term is due to expire."

[18] 97 Ops.Cal.Atty.Gen., *supra,* at p. 17; see *id.* at p. 16 ("the redrawn boundaries should not be used for a given office until the first regular election for that office").

[19] *Id.* at pp. 16-17.

[20] *Sloan v. Donoghue* (1942) 20 Cal.2d 607, 609-612.

[21] *Id.* at p. 612.

reapportionment "or only in the 20 new even-numbered districts" scheduled for 1974.[22] Applying *Sloan*, the court directed that "the senators in odd districts elected in 1972 were entitled to serve until 1976, and if vacancies occurred in those districts before 1976, they would be filled using the districts in effect in 1972."[23]

Based on these authorities and on our own opinions, we believe that the old supervisorial boundaries remain operative for election purposes until the next regular election for that seat after redistricting.

**2. The fundamental purpose of district elections is choosing a supervisor to represent each district, and a board of supervisors may not prohibit a supervisor from representing the district as it existed when the supervisor was elected.**

The opinion request asks whether supervisors represent their districts according to old boundaries or new district boundaries. As a threshold matter, we note that neither the Elections Code nor the Government Code defines what exactly it means to represent an area, and there could be questions about whether particular activities constitute "representation." It is beyond the scope of this opinion to address those questions. For the purposes of this opinion, we use "represent" according to its ordinary meaning: "to serve especially in a legislative body by delegated authority usually resulting from election."[24] As this definition shows, there is a direct connection between elections and representation. And as we will explain, statutory and decisional law confirms this basic proposition and establishes that a supervisor represents the area that elected that supervisor.

As mentioned earlier, Government Code section 25040 provides that "[e]ach member of the board of supervisors shall be elected by the district which he [or she] represents." This wording implies that a supervisor represents the same district from which the supervisor was elected. Further, under Elections Code section 21506, after redistricting and before the next general election, a recall election for a supervisor is held

---

[22] *Legislature v. Reinecke* (1973) 10 Cal.3d 396, 404 (*Reinecke*).

[23] *Gaona v. Anderson* (9th Cir. 1993) 989 F.2d 299, 301, citing *Reinecke, supra,* 10 Cal.3d at p. 404.

[24] Merriam-Webster online, "represent," def. 6b, at https://tinyurl.com/bdutdskb (as of Jul. 14, 2022); see also *id.*, def. 6a(1) & (2) ("to take the place of in some respect" & "to act in the place of or for usually by legal right"); Black's Law Dict. (11th ed. 2019) "representation," def. 2 ("The act or instance of standing for or acting on behalf of another").

22-501

according to the old district boundaries.[25]  This shows that a supervisor is politically accountable to the constituents of the area that elected that supervisor, and it follows that the supervisor continues to represent them during this period.

The California Supreme Court precedent discussed above also demonstrates that representation of a district area is a consequence of an election to that district area.  In adopting the use of old districts for special congressional elections after reapportionment, the *Sloan* court reasoned that "[a] district represents a defined territory and not a mere number."[26]  And the *Reinecke* case spoke directly about representation in a staggered-election system after reapportionment and indicated that electors are represented by the people whom they elect.  There, the court determined that a voter who was changed to a different state senatorial district due to reapportionment continues to be represented by the state senator from the voter's former district for the remainder of that state senator's term.[27]

More broadly, a foundational principle of our representative democracy is that constituents in an area elect a particular legislator to represent their interests.[28]  The reason for regional representation is that populations of some areas—such as county

---

[25] Elec. Code, § 21506, subd. (b) ("excluding a special election to fill a vacancy or a recall election" from using new boundaries after redistricting); see also Sacramento City Attorney Susana Alcala Wood, Opn. No. 22-001, Apr. 5, 2022 (concluding that a recall election for a city council member after redistricting and before the next regular election must use the district's old boundaries pursuant to parallel language in section 21606(b)).

[26] *Sloan v. Donoghue, supra,* 20 Cal.2d at p. 611.

[27] *Reinecke, supra,* 10 Cal.3d at pp. 404-405.  The court stated that "[t]hose electors who by redistricting [in 1974] are moved from an odd-numbered district to an even-numbered district were able to vote in a senatorial election in 1972 [in the old, odd-numbered district] and will be able to vote again in a senatorial election in 1974 [in the new, even-numbered district]." (*Id.* at p. 405.)  As a result, these electors "will be represented by two senators for two years following reapportionment"—between 1974 and 1976—including by the senator from the old, odd-numbered district, for the rest of that senator's term.  (*Ibid.*)

[28] See 28 Cal.Jur.3d Elections § 39 (2022) ("the elective franchise constitutes the foundation of our representative society and is a preservative of other basic civil and political rights"); Rosenthal, Fundamentals of Representative Democracy, Lesson Plans for High School Civics, Government and U.S. History Classes (2009) p. 32, at https://tinyurl.com/ha885zm4 (as of Jul. 14, 2022) (in our governmental system, the people "govern indirectly by electing legislators who represent them," and these legislators "represent their constituents" by "help[ing] constituents in their district who may have problems" and by "secur[ing] funds for projects . . . for their districts").)

districts—often have different characteristics and needs than others, and, as a result, often prefer different candidates.[29] Also, preserving the voters' choice of supervisor through continued representation of the old district during the post-redistricting period furthers the objective of redistricting statutes to protect voting power.[30] As we explained with respect to city councils, "[t]he voters within the old boundaries were the ones who elected the council member for that term, not the voters of the part of the new district that lies outside those boundaries."[31] It follows that before a supervisor's term has expired, the supervisor should not be prevented from representing the constituents in the area from which the supervisor was elected.

One county counsel submitted comments expressing the view that upon a redistricting ordinance becoming final, county supervisors immediately should represent *solely* the area within their district's newly-created boundaries. These comments interpret section 21506(b)'s old-boundary rule as applying only to a special or recall election. But that interpretation could lead to inconsistency should there be a vacancy in the supervisor's office before the next regular election.[32] In such a case, as agreed by county counsel, section 21506(b) directs that the old boundaries must be used for a special election to fill a vacancy for the remainder of the incumbent's term. Given this, and assuming county counsel's narrower interpretation of section 21506(b), two alternative scenarios are presented, both creating incongruous consequences.[33] If the old boundaries are used for a special election and if the new boundaries are used for the remainder of the incumbent's term thereafter, the voters of the district with the old boundaries will be asked to vote for a supervisor in a special election to represent other

---

[29] See *Griffin v. Bd. of Supervisors of Monterey County* (1964) 60 Cal.2d 751, 754-755; *Jauregui v. City of Palmdale* (2014) 226 Cal.App.4th 781, 793.

[30] *Garza v. County of Los Angeles, supra,* 918 F.2d at p. 775, citing *Kirkpatrick v. Preisler, supra,* 394 U.S. at p. 531.

[31] 97 Ops.Cal.Atty.Gen., *supra*, at p. 17, citing *Opinion of Justices to Governor* (Mass. 1972) 282 N.E.2d 629, 631 ("a legislator represents the constituency which elected him," so that "if the incumbent does not serve his full term but ceases to serve during his term, the resulting vacancy in the Ninety-second Congress will then occur in the district from which he was elected to office").

[32] *Braun v. Bureau of State Audits* (1998) 235 Cal.App.3d 1182, 1186 ("Statutes should be interpreted, of course, to avoid absurd and inconsistent results").

[33] See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 (in interpreting a statute, courts consider "the consequences that will flow from a particular interpretation").

constituents—those within the new boundaries.[34]  The other possibility is that the old boundaries would be used for a special election and then *also* for the remainder of the incumbent's term thereafter, but again, under county counsel's proposition, the new boundaries otherwise would be exclusively used after redistricting.  In that scenario, the circumstance of a vacancy and subsequent special election would result, in whiplash fashion, in the representation of that district number beginning in the old district after the incumbent's election, and then changing to the new boundaries after redistricting, then back to the old boundaries after the special election, and then back again to the new boundaries after the next regular election for that seat.[35]

Two county counsels also observe that if the newly-created boundaries are exclusively used after redistricting for the purpose of representation, each county resident will be represented by one supervisor at all times.  By contrast, they point out, if redistricting does not become operative for this purpose until the next regular election, then at least some residents will have double representation and some no representation for a period as a result of staggered regular elections.  But the California Supreme Court has recognized that in a staggered-election system, "somewhat anomalous results in representation may be the necessary by-product of reapportionment."[36]  Moreover, as discussed below, each supervisor also may represent the areas of the supervisor's new district until the next regular election for that seat if the board so directs.  In such a case, all county residents will have continuous supervisorial representation after redistricting.

Because a supervisor represents the district that elected the supervisor for the entirety of the supervisor's term, a supervisor may not be prohibited from representing the supervisor's old district between redistricting and the next regular election for that seat.

---

[34] See *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 187 ("We must of course, interpret statutes to avoid anomalous or absurd results that the Legislature could not have intended and that would frustrate the Legislature's intent").

[35] *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 388 (in ascertaining legislative intent, a court seeks "to avoid a construction that would lead to unreasonable, impractical, or arbitrary results").

[36] 66 Ops.Cal.Atty.Gen. 412, 414 (1983), citing *Reinecke, supra,* 10 Cal.3d at pp. 404-405 ("These inequalities [in representation] among groups of electors are the inevitable byproduct of reapportioning a legislative body whose members are elected for staggered four-year terms").

**3. A board of supervisors may, however, direct a supervisor to also represent constituents according to the new district boundaries between redistricting and the next regular election.**

As part of its broad authority over county government, a board of supervisors may choose when to begin using new district boundaries to organize county affairs, unless a law or legal obligations require exclusively using the old boundaries. In this regard, a board of supervisors "may do and perform all other acts and things required by law not enumerated in this part, or which are necessary to the full discharge of the duties of the legislative authority of the county government."[37] A board's powers include not only those expressly enumerated by statute, but those implied powers necessary to the exercise of those powers.[38] Boards of supervisors generally have the power to change their district boundaries for convenience and have the duty to change them after the decennial census.[39] And no state law prohibits a board of supervisors from assigning representation for the new districts before the next regular election.

Although the primary purposes of districts are for election and representation, as discussed, counties sometimes use supervisorial districts as convenient geographic units for other purposes. Absent a legal obligation to use the old districts for a specific purpose, a county may begin using the new district map for other purposes when it chooses. There may be other reasons that a county must use the old district boundaries, such as when there is a preexisting contract to provide services to a particular district. Or, as part of this general authority, a county may direct supervisors to represent constituents or provide constituent services according to the new district boundaries, in addition to continued representation of constituents based on the old district boundaries.

Analogous authority allows multiple representation of the same area by state legislators after redistricting. In *Legislature v. Reinecke*, for example, the California Supreme Court held that after reapportionment of the California State Senate, those electors who changed from an odd-numbered district to an even-numbered district would be represented by two senators—from the old and new districts—for two years following the next regular election of the even-numbered district.[40] Also, in *Friends of Assemblywoman La Follette v. Superior Court*, the Court of Appeal held that after reapportionment and before the next regular election, an assembly member is permitted to campaign in and service territory of the new district in addition to the territory of the

---

[37] Gov. Code, § 25207.

[38] *Harris v. Gibbins* (1896) 114 Cal. 418, 419-420; *Couts v. San Diego County* (1934) 139 Cal.App. 706, 711; 45 Cal.Jur.3d Municipalities § 340 (2022).

[39] Elec. Code, § 21500; Gov. Code, §§ 25200.

[40] *Reinecke, supra,* 10 Cal.3d at p. 405.

22-501

old district.[41]  Additionally, the Fair Political Practices Commission has advised that after reapportionment and before the next regular election, for the purpose of the constituent-meeting exception to the prohibition against using public funds for mass mailings, an assembly member's constituents are those of the member's old district plus those in the geographic territory added to that district by reapportionment.[42]  Based on the board of supervisors' inherent authority, the absence of any specific prohibition, and the analogous precedent for state legislators, we believe that the board may assign supervisors to represent their new districts after redistricting, so long as they also represent the districts from which they were elected.

## CONCLUSION

For the reasons stated, we conclude that after redistricting and before the next regular election, the supervisors may not be prohibited from representing constituents in areas of the districts from which they were elected.  Nonetheless, the board of supervisors may direct that the supervisors also represent their newly-drawn districts during this period.

---

[41] *Friends of Assemblywoman La Follette v. Super. Ct.* (1982) 134 Cal.App.3d 832, 837.

[42] Barbara Milman, Chief Counsel, Cal.Fair.Pol.Prac.Com., Adv. No. I-91-567, 1992 WL 795363 (Feb. 4, 1992).